DAVID NEWHART, JR., *vs.* St. PAUL CITY RAILWAY CO.

Submitted on briefs June 30, 1892.   Decided Aug. 17, 1892.

**Injury from Defective Brake.**

Evidence deemed sufficient to justify the conclusion that the plaintiff was injured by the sudden yielding or slipping of a defective brake on a street car, which he was using, (although the precise nature of the defect is not apparent,) and that the defendant had notice of the defect.

**Contributory Negligence not Shown.**

The fact that the plaintiff knew that the brake would not properly control the motion of the car, without applying unusual force, did not conclusively charge him with notice that injury might be expected from the act of using the brake.

**Notice of Defect.**

Proof of the delivery of a written notice of the defect to a servant of the defendant, to be delivered to the defendant, (the servant having been appointed by the defendant to carry such messages,) is at least *prima facie* proof of notice to the defendant.

Appeal by defendant, the St. Paul City Railway Company, from an order of the District Court of Ramsey County, *Kelly*, J., made September 16, 1891, refusing a new trial.

This action was brought by the plaintiff, David Newhart, Jr., against the defendant, to recover for injuries sustained by him in March, 1888, in attempting to set a defective brake on one of defendant's cable cars.   On January 27, the jury found a verdict for the plaintiff and assessed his damages at the sum of $1,665.   A motion for a new trial was made, and defendant appealed from the order denying it.

*Henry J. Horn*, for appellant.

The plaintiff had notice of the defect in the brake prior to the accident.   A servant is chargeable with actual notice of every fact which he would have known had he exercised ordinary care to keep himself informed as to matters concerning his employment.   Shearman & Redfield, Neg. (4th Ed.) § 217; *Perigo* v. *Chicago, R. I. & P.*

Ry. Co., 52 Iowa, 276; Walsh v. St. Paul & Duluth R. Co., 27 Minn. 367; Smith v. Winona & St. Peter R. Co., 42 Minn. 87. Plaintiff, therefore, in using the brake after he had knowledge of the defect, assumed the risks incident thereto, and cannot recover. He was guilty of contributory negligence.

The extra exertion in working the brake was a voluntary act on his part, and the consequences injurious to himself were not directly or proximately connected with the alleged defect in the brake, or any act or omission of the defendant. Williams v. Central Ry. Co., 43 Iowa, 396; Pittsburgh & C. Ry. Co. v. Sentmeyer, 92 Pa. St. 276; Gould v. Chicago, B. & Q. R. Co., 66 Iowa, 590; Sloan v. Graham, 85 Ill. 26; Cassidy v. Maine Cent. R. Co., 76 Me. 488.

There was no evidence that defendant had notice of the defect in the brake, if there was a defect.

*Erwin & Wellington*, for respondent.

There is sufficient evidence to support the verdict on the propositions that there was a defect in the brake; that defendant had notice of the defect; that plaintiff did not have notice thereof sufficient to put him on his guard; and that the defective brake was the proximate cause of the injury.

The obligation of the company was to furnish its employees reasonably safe and sound machinery for their use, and if the brake was originally defective, and by reason of such defect, an employee is injured, the company is liable. Columbus & Zenia Ry. Co. v. Webbs, 12 Ohio St. 475. If the brake was originally properly constructed and had become defective from any cause whatever, and the company, having notice of such defect, sends it out for the use of its employees, and an employee is injured by reason thereof, the company is liable. Greene v. Minneapolis & St. L. Ry. Co., 31 Minn. 248.

The mere fact that plaintiff knew the brake was defective, does not show contributory negligence. Kane v. Northern Cent. Ry. Co., 128 U. S. 91. Unless it conclusively appears from the evidence, as a matter of law, that plaintiff was guilty of contributory negligence, the court will not disturb the verdict. Mayo v. Boston & Maine R.

*Co.,* 104 Mass. 137; *Jones* v. *East Tenn., etc., R. Co.,* 128 U. S. 443; *Bennett* v. *Syndicate Ins. Co.,* 39 Minn. 254; *Lyberg* v. *Northern Pac. R. Co.,* 39 Minn. 15.

DICKINSON, J. In March, 1888, the plaintiff was in the service of the defendant as a conductor on its street cable line, running on Selby avenue and other streets. He prosecutes this action to recover for an injury which he claims to have received in applying a brake on a passenger coach. The responsibility of the defendant is placed upon an alleged defective condition of the brake of the car. This brake was of a common kind, consisting of "shoes," which were drawn against the wheels by means of levers beneath the car, connected by a chain to the lower end (beneath the car platform) of an upright brake staff. The upper end of the brake staff was turned in the form of a crank. The power was applied to this crank, the turning of the brake staff on its axis causing the chain to wind up on it until the brake shoes came in contact with the wheels. It is alleged, in substance, that the brake was so defective that the application of ordinary force would not stop the car; that on the occasion here referred to, it becoming necessary for the plaintiff to stop the car, and the usual exertion being ineffectual, he put both hands on the handle or crank, pressing also against the same with his breast, exerting his full strength; that the unusual exertion and the resistance thereto by the defective brake produced internal injury and a hemorrhage of the lungs.

It may be briefly stated that this occurrence took place at the west end of the car track on Selby avenue, about one block west of the "power house." For the purpose of switching this train, consisting of the motor or "grip" car and a passenger coach, from one track to the other, the coach had been detached from the "grip" car, and was run westward down a gently descending grade towards the end of the track. It became the duty of the plaintiff to stop the car, and it was for that purpose that he applied the brake. It appears from his evidence that some defect in the brake rendered necessary the extraordinary exertion above stated; that while he was thus pushing with all his strength, with his hands holding the crank and his

breast pressed against them, he heard a noise as of the chain under the car, the crank yielded suddenly to the pressure, and threw him forward with his breast against the brake handle, or crank; that he felt some rupture within his breast, and a sudden but temporary dizziness; that he suffered pain, which increased afterwards; that the next day he commenced to spit blood. He continued his work for about two days, when he had to stop. It seems to be certain that he consulted his family physicion shortly afterwards, complaining to him of having hurt his *left* lung; that inflammation of the lung set in, which extended to both lungs; that about ten or twelve days after this occurrence he suffered a severe hemorrhage from the lungs, and was under medical treatment for some two and one-half months. The evidence was conflicting as to whether he had ever before had any such hemorrhage, he and his wife saying that he had not, and his family physician that he did not know of any. It does appear, however, that there was some tubercular affection at the apex of the *right* lung, and it seems pretty apparent that he was not a strong, healthy man.

In the light of the whole evidence, including the testimony of medical experts, while it may be said that such ills as the plaintiff undoubtedly suffered directly after the accident would not be likely to result from such a cause, yet the jury might reasonably consider that such consequences are possible, especially in the case of a person whose lungs are not in a healthy condition, and that the ills which he certainly suffered were actually caused by injury to his lungs from being thrown against the brake by reason of its slipping or giving way, while the lungs were inflated, as they naturally would be while making great exertion. The case is not a clear one in this respect, but we think that it was a proper one for the decision of the jury. We are not required to decide what might be the result if the injury were to be attributed solely to great exertion on the part of the plaintiff.

The point is made that the court erred in allowing proof going to show that the brake thus slipped or gave way, so that the plaintiff fell against it, because that was not alleged in the complaint. We do not deem the point well taken, regarding the evidence as showing

particularly *how* the injury was produced, the complaint .having stated the matter generally, rather than particularly. Besides this, the objection was too general and indefinite to be available. It seems to have been made in advance, with respect to evidence not specified, and there was no objection to any particular evidence.

It is not very apparent from the evidence what was the precise defect in the brake. Yet there was enough direct evidence going to show that it was faulty, and that the defendant was notified of the fact in the forenoon of the day of the accident, (when, as the evidence tended to show, the plaintiff was not on the car,) but that the car was allowed in the afternoon (when the accident occurred) to go out over the line past the power house, which was the place for the inspection and repair of cars, and where cars were kept when not in use. One of the "hill brakemen" testified in the case. His duty was to board the trains as they were going down and up a steep hill east of the power house, to test or inspect the brake on the coach and operate the brake on the hill. He testified that in the forenoon when he boarded this car to go down the hill he found the brake defective, so that it would not hold the car properly, that it required unusual force to apply the brake, and that he sent notice of this to the power house, as he was required to do in such cases. He stated that if the brake were in good order the chain should wind spirally around the staff, the coils not doubling one upon another. His testimony as to the condition of the brake is confirmed by that of the motor man or grip man on the train, who observed that the chain coiled upon itself, instead of winding spirally on the staff. There was evidence attributing the difficulty to the fact of the chain being too long. It is perhaps not very clear that this was the defect, but, however that may be, the evidence was sufficient to support the conclusion that there was some defect in the brake, of which the defendant had such notice that it ought to have been remedied before the car was sent out again from the power house on the trip in the course of which the accident occurred. The fact being established that the brake was out of order, and that the defendant had reasonable notice of it and opportunity to repair it, even though the precise nature of the defect is not clearly shown, and may be somewhat

conjectured, that does not forbid a recovery. Of course, if the existence of any defect, resulting in injury, were not proved, but left to mere conjecture, the case would be different.

It is insisted that the plaintiff knew the defect, and that he was chargeable with contributory negligence. This was properly submitted to the jury, and their determination is not unreasonable. It is to be conceded that the plaintiff knew that there was some defect in the brake which made it inefficient as a brake, so that it was not in proper condition to be used on the steep hill where the lives of passengers might depend on its efficiency; but that he had any reason to suppose that any risk would be incurred by a person in the act of using the brake cannot be taken as clearly established. It was for the jury to say whether, in view of what knowledge he had, he ought to have anticipated that harm might result from using the brake. The duty of inspecting the appliances in use devolved upon others, not on him. The hill brakeman gave to the plaintiff a second written notice of the defect to be delivered at the power house. He is not conclusively chargeable with negligence from the fact that he did not deliver it until he had run one block beyond the power house, and switched the cars to the other track. It would seem from the evidence that the defective car should have been thus switched off, if it was to be repaired, in order that it might be run into the power house. At least the jury might infer this from the evidence.

The only remaining point upon which there can be any real doubt arises upon an exception to the charge in which the court instructed the jury (in substance) that if the hill brakeman discovered a defect, and reported it to the foreman at the power house, as he had been required to do in such cases, by note addressed to the foreman, and handed to a conductor on a train on its way to the power house, that "would be notice to the defendant company, and it makes no matter whether the foreman ever received that note or not. By adopting this manner of notifying its foreman, the company took the risk of any conductor, to whom such notice might be handed, failing to deliver it." We do not decide whether this was correct as a general legal proposition. The effect of the instruction was that the jury should assume that the notice, if sent in the manner stated, was

received, or, at least, that the case should be treated as though it had been received. We think that the *evidence* was such that the jury should have taken it as conclusively shown that the notice was delivered. The fact of delivery was certainly established *prima facie* by proof that the defendant had appointed that method of communicating notice to itself through its own agents, and, in the absence of opposing proof, at least, it is to be presumed, as against the defendant, that its agent delivered the notice put in his hands for that purpose. The evidence of the foreman, Sloan, that (nearly three years after the event) he had no recollection of this particular notice, he at the same time stating that quite a number of notices were sent him by the hill brakemen, is obviously of no force, and the presumption stands really unopposed. Hence there was no prejudice, even if the legal proposition as stated was not correct.

Order affirmed.

(Opinion published 52 N. W. Rep. 983.)