HANS P. SLETTE *vs.* GREAT NORTHERN RAILWAY CO.

Argued May 4, 1893.   Decided May 22, 1893.

**Negligence—Excessive Speed of Freight Train.**
 Evidence showing the running of a freight train at excessive speed *held* to justify the conclusion that it was negligence and a proximate cause of a collision with a hand car running over the road in advance of the train.

**Section Man not Negligent in Obeying Section Boss.**
 Evidence *held* to justify the conclusion that the foreman of the hand car was negligent in not having stopped and taken the car off the track,

he knowing that the train was following; also that the plaintiff, a section man on the car, under the direction of the foreman, might be deemed not negligent, even though the foreman was negligent.

**Verdict Excessive.**

A verdict for $4,100 for a broken leg *held* excessive.

Appeal by defendant, the Great Northern Railway Company, from an order of the District Court of Yellow Medicine County, *Gorham Powers*, J., made September 16, 1892, denying its motion for a new trial.

*M. D. Grover* and *C. Wellington*, for appellant.

*Spooner & Taylor*, for respondent.

DICKINSON, J. The plaintiff was a section man in the defendant's service. He and his foreman, one Palmer, went out from Cottonwood station with a hand car, going northeast, to engage in their work on the road. Only these two men were on the car. They knew then, from seeing the smoke of the engine, that a train was coming towards Cottonwood from the southwest, the train being then about two miles away, according to the plaintiff's testimony, but much more than that according to some of the evidence. It was an irregular freight train, not running on schedule time. The railway track over which the hand car was run seems to have been constructed on an embankment, but there were two farm crossings where the car might be taken off to let the train pass. The first was about a half mile from Cottonwood and the other a half mile further on. Between the first and second crossings there was a steep descending grade, going northeast, and a bridge and a reverse curve in the road. When the men started out, the purpose was to run to the first crossing, and take the car off there to let the train pass; but when they reached that place, the car then running rapidly, the foreman determined to run on to the second crossing, and by his direction they went on without stopping. The plaintiff thinks that the train was then about a half mile distant. It being down grade, and with a favoring wind, they ran the car rapidly; but before reaching the bridge the train came in sight, it being then, as estimated, from 900 to 1,100 feet from the hand car. The engineer then first saw the car and tried to stop the train. Palmer

kept on with the hand car until he had crossed the bridge.    Then the car was stopped, and the two men attempted to take it off the track.    They had not time to fully do this before the engine came up.    The plaintiff ran out to the side of the embankment, as he testifies, before the engine struck the car.    The car was thrown upon him, and his leg broken.    He prosecutes this action to recover for the injury.

The court instructed the jury to consider the question of the alleged negligence of the defendant in only two particulars: *First*, as to the speed of the train; and, *second*, as to the negligence of the plaintiff's foreman.    Involved with these was also the question whether the plaintiff was also guilty of negligence.

We are of the opinion that the evidence as to the speed of the train and as to the plaintiff's conduct presented a case for the jury, both as respects the negligence of the defendant and the contributory negligence on the part of the plaintiff.

There were fifteen loaded cars in the train.    It passed the station at Cottonwood, without stopping, at a rate of speed estimated by several witnesses at from thirty to thirty-five miles an hour, although evidence on the part of the defendant tended to show that the speed was not more than sixteen or seventeen miles an hour. The running regulations forbade such trains to pass stations at a speed greater than eight miles an hour.    The train was provided only with hand brakes.    If the train was running at the greater speed above mentioned, it was very much in excess of that allowed by the regulations of the defendant, as it would seem, and much greater than the ordinary speed of freight trains at that place.    If the train had been running at only the ordinary rate of speed it is reasonable to suppose that the accident might not have occurred. In the view of the jury the extraordinary speed of the train may have been a proximate cause of the collision.    But intimately related to this feature of the case is that of the plaintiff's own conduct.    For one not employed in railway service to risk his life by attempting to run a hand car in advance of a train known to be approaching, would, of course, be negligence.    But such a conclusion is not a matter of course in the case of railroad section men, whose duty requires them to thus be upon and pass over the railway, although there may be obvious danger in so doing.    From

the fact that such conduct is dangerous it does not necessarily follow that it should be characterized as negligence. The service necessarily involves exposure to danger, and the question of the propriety of the servant's conduct must be considered with regard to the nature of the service and the duties which he has to perform. It could not be said as a matter of legal inference that these section men were negligent, in view of the duties connected with their service, in starting out from their station to run a half mile to the first crossing, although they knew that a train was following them, which might stop for a considerable time at the station, although it might not, as it did not, stop at all. That was a question proper to submit to the jury. Nor do we feel at liberty to say that the plaintiff is conclusively chargeable with negligence from the fact that the car was not stopped, or that the plaintiff did not get off, at the first crossing. According to the evidence the car passed there at a speed of sixteen miles an hour, making it unsafe for the plaintiff to get off. He had not the control of the car, but was working under the direction of and with the foreman, who then told him, as the plaintiff testified, to "work hard to the next crossing." He did not know, as may be supposed from the evidence, that the train was coming at an unusual rate of speed. It was not unnatural that he should defer somewhat to the judgment and direction of the foreman, and, as the latter was, as we understand, also engaged in propelling the car, the plaintiff might well be at a loss as to what he should do, even if he had appreciated the danger of going on. The time for decision would seem to have been but brief, as the first crossing where the car could be conveniently taken off was quickly passed, and the car running on an embankment, as we understand. Under the circumstances, we think that it was for the jury to say whether the plaintiff was chargeable with want of such care as ordinarily prudent men would exercise in the same situation.

Our conclusion is the same as respects the subsequent conduct of the plaintiff. The necessity for endeavoring to take the car off the track, so as to prevent a collision, was apparent; not merely because of the danger to property, but from a regard to the safety of the persons on the train. The evidence justified the belief that the plaintiff, after having tried to get the car off, attempted to get out

of the way of danger when it became apparent that a collision was inevitable.

The court submitted to the jury the question whether the plaintiff's foreman was chargeable with negligence. Although the foreman was a fellow servant with the plaintiff, yet, under Laws 1887, ch. 13, the negligence of the fellow servant might constitute a ground for recovery against the master. *Steffenson* v. *Chicago, M. & St. P. Ry. Co.*, 45 Minn. 355, (47 N. W. Rep. 1068.) We think that the case presented was proper for the consideration of the jury upon the point as to whether the foreman was negligent in not stopping at the first crossing, or beyond that point, as soon as it was discovered that the train was overtaking the hand car. The foreman may have been chargeable with negligence, and yet the plaintiff may be deemed to have been not negligent. The foreman could have stopped the car at will. Presumably the plaintiff would have lent his aid in doing so if the foreman had not determined to go on. He testifies that he suggested at the first crossing that they should stop there. On the other hand, as has been already said, the plaintiff was not controlling the movement of the car, nor propelling it alone; and for him to have refused to lend his aid in propelling might have increased, rather than averted, the danger, unless the foreman had deferred to him, and relinquished his determination to go on.

But it is contended that the verdict was excessive, and we think that it must be so considered. It was for $4,100. The plaintiff was thirty years of age. He was earning $35 a month, and there is no suggestion that his earning capacity was greater than was thus indicated. The injury consisted only in a transverse fracture of the thigh bone. As appears by the testimony of the physician called by the plaintiff, his recovery had been satisfactory, but, as is common in such cases, the leg was shortened from half to three-quarters of an inch. This would cause the plaintiff to limp in walking, but even this would be obviated by wearing a high-heeled boot. The physician considered that the leg would be as good as ever, save as above indicated, and excepting also that it might be expected to tire a little quicker from this cause, and that there might be a tendency to rheumatic pain. Of course, the pain, loss of time, and expense ($100) incident to such an injury are to be considered. But,

in view of the whole case, we are unable to resist the conclusion that the verdict was beyond the proper limits of mere compensation. Taking the plaintiff's own showing as to his earning capacity, the amount of the verdict is equal to the sum of his earnings for nine and a half years' labor; and that is to be recovered in advance and at once. The interest on that sum at six per cent. a year would be considerably more than one half of what he has been accustomed to earn. And yet it seems to be apparent that his earning capacity for the future will be but little, if at all, impaired. It is not without reluctance that we determine that the verdict should not stand; but the growing tendency in the direction of extravagant verdicts in this class of cases should prompt the courts to see to it that the bounds of reasonable compensation be not plainly exceeded, unless the case justifies punitory damages, as this case does not. For this cause alone the order denying a new trial is reversed.

VANDERBURGH, J., did not participate.

On June 13, 1893, this court, on motion of the plaintiff and notice to defendant, modified the decision, so that the order denying a new trial is reversed, unless within twenty days after the filing of the mandate from this court to the District Court, the respondent shall file in the latter court his consent that the verdict and the judgment to be entered thereon be reduced to the sum of two thousand and one hundred dollars; and that, if such consent shall be filed, the order denying a new trial shall stand and be affirmed. [Reporter.

(Opinion published 55 N. W. Rep. 137.)