ALEXANDER M. CAMPBELL v. RAILWAY TRANSFER COMPANY and
Another.[1]

July 7, 1905.

Nos. 14,354, 14,355—(173, 174).

**Trial—Order of Proof.**

It is fairly within the discretion of the trial court to allow the plaintiff to give all his evidence at one time, even though such evidence tends to show negligent custom, before it is shown by some direct evidence that the negligent act complained of was committed by defendant. In this case, *held*, that sufficient foundation for admission of such evidence was in fact subsequently laid.

**Question for Jury.**

When it is shown that one defendant was in the habit, when unloading cars, of placing boards, used for the purpose of closing car doors, upon the top of such cars, and another defendant was in the habit of receiving such cars with admitted knowledge of such custom, the question of negligence as to both defendants was properly one of fact for the jury.

**Failure to Inspect.**

Anterior negligence of one defendant does not shield another defendant from responsibility for its own negligence in its failure to inspect, so as to provide a reasonably safe place for its employees' labor.

**Contributory Negligence.**

Evidence examined, and *held*, that the plaintiff was not guilty of contributory negligence as a matter of law.

**Assumption of Risk.**

The defense of assumption of risk is not available to a defendant not an employer of the person injured.

**Same.**

Plaintiff, who while coming down the side of one car, was injured by one end of a grain-door board resting against a cleat supporting the foot board on top of another car, and protruding over the side of that other car, which was standing on an adjoining track, did not, as a matter of law, assume such risk.

**Pleading—Waiver of Objection.**

Where two causes of action are improperly united, the objection thereto is waived, under sections 5232, 5234, 5235, G. S. 1894, unless raised

1 Reported in 104 N. W. 547.

by answer or demurrer, and not by way of objection to the introduction of evidence.

**Damages.**

> An award of $3,000 for a compound, comminuted fracture of the right leg, resulting in permanent injury, and for some damage to the left leg, whereby plaintiff, a switchman, earning $3 a day, was confined to a hospital for several months, and was incapacitated from labor for about a year, is not excessive.

Action in the district court for Hennepin county against the Railway Transfer Company of the city of Minneapolis and Northwestern Consolidated Milling Company, to recover $10,000 for personal injuries. The case was tried before Brooks, J., and a jury, which rendered a verdict in favor of plaintiff for $3,000. From an order denying their separate motions for judgment notwithstanding the verdict or for a new trial, defendants appealed. Affirmed.

*Albert E. Clarke,* for appellant Railway Transfer Company.

*Cobb & Wheelwright,* for appellant Northwestern Consolidated Milling Company.

*Humphrey Barton,* for respondent.

JAGGARD, J.

This was an action to recover damages for personal injuries caused by negligence of both defendants. The defendant Railway Transfer Company operates what might be called a switching railroad among the flour mills at St. Anthony Falls, over which it transfers cars from other railroad companies to the mills, and from the mills to such railroad companies. The defendant milling company owns and operates a number of these mills. The transfer company delivered freight cars to the milling company at one of its mills. The latter then took charge of and unloaded the same. Afterwards the transfer company, by agreement with the milling company, took the cars away. In May, 1903, plaintiff entered the employ of the transfer company. On April 5, 1904, the transfer company delivered to the milling company several cars loaded with grain. The doors of the car doing the damage here were closed with boards. On April 6, 1904, the plaintiff, while coming down on a ladder from the top of a Pere Marquette freight car, was caught between a board projecting from the top of the other car,

known as "Soo Car 3782," on an adjacent track, and the car from which he was descending. While defendants united against the plaintiff, their defenses were different, and each claimed that, if any liability existed at all, such liability was that of the other defendant only. The jury awarded a verdict of $3,000 against both defendants. The case comes to this court upon separate appeals from an order denying each defendant's separate motion for judgment notwithstanding the verdict, or for a new trial. The appeals of both defendants will be treated, as far as this opinion is concerned, as one.

1. The defendant milling company contends that reversible error was committed by the court in receiving evidence that on other occasions cars came from the mills with boards on top of them, under objections specifically pointing out and fully apprising the court of the ground of objection—that negligent habit could not be proven until it be shown by the evidence that the particular board complained of was placed on the car causing the damage by the defendant milling company. Elliott, Ev. § 173; Shaber v. St. Paul, M. & M. Ry. Co., 28 Minn. 103, 108, 9 N. W. 575; Davidson v. St. Paul, M. & M. Ry. Co., 34 Minn. 51, 24 N. W. 324; Pittsburgh v. McNeil (Ind. App.) 66 N. E. 777; Dunnell, Minn. Trialbook, § 847; Newstrom v. St. Paul & D. R. Co., 61 Minn. 78, 63 N. W. 253; Fonda v. St. Paul City Ry. Co., 71 Minn. 438, 74 N. W. 166; Kaillen v. Northwestern B. Co., 46 Minn. 187, 48 N. W. 779.

The memorandum of the trial court on this point justifies the reception of the evidence on two grounds, namely: (1) Because the testimony was admissible as against the transfer company, and, if admissible upon any ground or against any party, it must be received, and, if it be ineffectual or inadmissible for any specific purpose or against any particular party, the court should, upon request, so charge the jury; and (2) because the objection was addressed to the order of proof. We are of opinion that the latter ground, at least, was well taken. It was fairly within the discretion of the trial court to allow, as it did, the plaintiff to give at one time all his testimony, including that pertaining to this custom, and, in case no foundation for it was subsequently laid, to strike it out on the court's own motion. In point of fact, however, direct testimony was subsequently produced. It was shown that no board was on the car when it was delivered to the mil-

ling company on the morning of April 5; that the car was taken out about two o'clock on the morning of April 6 to the yard, to be distributed to the transfer company; that certain boards were taken out of the car by the milling company when the car was unloaded; that afterwards the board was on the car. A witness, who loaded the car in North Dakota, testified that the boards there used by him in closing the car-door space were of a kind of hardwood peculiar to that part of the country, and that the board which injured the plaintiff was of this specific type. While it is true that the servants of the milling company swore that they did not put this board on the top of the car, the testimony referred to was sufficient to have justified the introduction of evidence of the custom, if it had preceded in point of time the reception of proof of negligent custom. The court was therefore within the exercise of its discretion as to order of proof. Gillett, Ind. Ev. § 68.

2. The negligence of the milling company was sufficiently shown to have been a question of fact to be determined by the jury, viz., whether or not its employees placed the board on the Soo car in question in pursuance of a demonstrated custom. The negligence of the transfer company was also for the jury.

Its duties as to inspection in this instance have not the same basis as if the car had come to it from a connecting carrier. Its car went to the milling company in a safe condition, and returned in a dangerous condition. The transfer company was not directly responsible for the conduct of the servants of the milling company, to whom it stood in no contractual relation, and over whom it had no control. It insists that it had no notice, actual or constructive, of the presence of the board on the top of the car. Sporadic or isolated instances of placing a board on the top of a car might well be held not to impose the duty of inspection in that regard. In this case, however, there was a long-established, easily observed, and persistent custom to that effect on the part of the milling company. The transfer company had such a direct knowledge that it complained, and demanded the cessation of that habit. In the conflict of interests between the two defendants, the milling company insisted that the presence of the board on the top of the car, with which we are here concerned, was due to the custom of the transfer company's employees to put these boards on the tops of

cars, and to then throw them off at stated places for subsequent personal use or sale; and the transfer company contended that "the uncontradicted evidence shows" that the milling company's servants continued their dangerous custom. On either theory the negligence of the transfer company would be for the jury.

There was in fact sufficient evidence of the practice on the part of the other defendant, though somewhat abated in extent, to create a question for the jury as to constructive notice, and negligence by the transfer company with respect to such custom, in performance of its duty to provide its servant, this plaintiff, with a reasonably safe place in which to do his work, to not expose him to unknown and unnecessary hazard, and thereunto to make reasonable inspection. It failed in the performance of this duty, according to the finding of the jury.

There is no merit in the transfer company's contention that, if any one is liable, it must be the milling company only, because its negligence was the proximate cause of the damage. In point of fact, that negligence was anterior, but the responsibility as a legal cause in such a case does not depend upon the sequence in time of the wrong charged. Missouri Pac. Ry. Co. v. Moseley, 57 Fed. 921, 6 C. C. A. 641. It is not essential that a juridical cause be a sole cause. Lake Shore v. McIntosh, 140 Ind. 261, 38 N. E. 476; McClellan v. St. Paul, M. & M. Ry. Co., 58 Minn. 104, 59 N. W. 978. When damage complained of is the result of the wrong of the defendant and a third person, and could not have been produced in the absence of either, the defendant's wrong is, in law, a proximate cause of the injury. McMahon v. Davidson, 12 Minn. 232 (357); Campbell v. City of Stillwater, 32 Minn. 308, 310; 20 N. W. 320; Johnson v. Northwestern Tel. Exch. Co., 48 Minn. 433, 51 N. W. 225; Grand Trunk Ry. Co. v. Cummings, 106 U. S. 700, 1 Sup. Ct. 493. Accordingly the anterior negligence of the milling company in putting the board on the car did not, in view of the persistence of the dangerous custom, shield the railway company from responsibility for its failure to inspect that car, and to provide a reasonably safe place for its employees' labor. Teal v. American Min. Co., 84 Minn. 320, 87 N. W. 837; Moon v. Northern Pac. R. Co., 46 Minn. 106, 48 N. W. 679; Heron v. St. Paul, M. & M. Ry. Co., 68 Minn. 542, 71 N. W. 706. And see 34 Cent. Dig., cols. 672–676, inclusive.

3. The plaintiff was not guilty of contributory negligence as a matter

of law. It was not his duty, as the milling company in effect insists, to examine the Soo car, and see that it did not have boards on it, while he was working with the crew of men which pulled out from the mill the string of eight or ten cars, of which the Soo car doing the damage was one. The master, and not the servant, was required by law to make the inspection. His work did not require him to, and he did not, according to the evidence, pass over this particular car. Nor was he, as a matter of law, guilty of contributory negligence in descending from the side of the moving car near the car doing damage, as the transfer company insists. He was not bound to wait until the car stopped. To have done so might have exposed him to danger when the car on which he was riding bumped into another car. He was not negligent in getting off of a moving car on the side he did, to enable him to go back more quickly to the train and get another car, so long as the cause of the injury was not the rapidity of the motion. In doing what he did he was serving his master to the best of his ability, and in the usual and customary manner, which would not have been dangerous if his employer had not been negligent. The defendants accordingly have not conclusively shown negligence on his part with reference to the producing cause of the injury. Flanders v. Chicago, St. P., M. & O. Ry. Co., 51 Minn. 193, 53 N. W. 544; Olson v. Schultz, 67 Minn. 494, 70 N. W. 779; Curtis v. Chicago, 95 Wis. 460, 70 N. W. 665; Phillips v. Chicago, 64 Wis. 475, 25 N. W. 544; Northern Pac. Ry. Co. v. Tynan, 119 Fed. 288, 56 C. C. A. 192; Terre Haute & I. Ry. Co. v. Mansberger, 65 Fed. 196, 12 C. C. A. 574.

4. The plaintiff did not assume the risk of the projecting board. The basis of the contention of the defendant transfer company, to which only, as his employer, this defense is available, was that defendant was charged with no more knowledge than the plaintiff as to the danger from the projecting board; that, if either should have known of the danger, the plaintiff, whose knowledge of the custom is fully shown, should also have known it, and therefore he assumed it. It is a well-settled rule in this state, however, that "the master and servant do not stand at all upon the same footing in these matters. It is the master's duty to supply safe instrumentalities for the use of his servants. He is bound to exercise reasonable diligence in informing himself as to whether his machinery is safe; whereas the servant, in the absence of

notice to the contrary, or something to put him on inquiry, has a right to assume that his master has done his duty, and to rely on his superior judgment. * * * He is not necessarily bound to know as much as his master ought to know as to what is or what is not safe. Again, it is one thing to be aware that machinery is defective or in a particular condition, and another to know or appreciate the risk resulting therefrom. * * * The mere fact that a servant knows the defects does not necessarily charge him with contributory negligence, or the assumption of risks growing out of those defects. The question is, did he know, or ought he, in the exercise of ordinary common sense and prudence, to have known, the risks to which the condition of the instrumentalities exposed him." Wuotilla v. Duluth Lumber Co., 37 Minn. 153, 155, 33 N. W. 551; Christianson v. Northwestern Compo-Board Co., 83 Minn. 25, 85 N. W. 826; Sneda v. Libera, 65 Minn. 337, 68 N. W. 36; Newhart v. St. Paul City Ry. Co., 51 Minn. 42, 52 N. W. 983; Davidson v. Cornell, 132 N. Y. 228, 30 N. E. 573.

The plaintiff was injured, not while passing over the way on the top of the car, provided for the use of brakemen, which risk it might have been held he would have undertaken, but by a board protruding over the side of the car, which by the same reasoning he could not be held to have assumed. He was not, as a matter of law, bound either to anticipate that, or to investigate whether he might, in descending from the car, be exposed to danger from the Pere Marquette car which would happen to be on the next adjoining track, arising from the facts that one end of a grain-door board would rest against a cleat supporting the way on top of the car, and that the other end would protrude over the side of that car. It would be carrying the doctrine unreasonably far to conclusively hold that he should have foreseen this possibility or have appreciated the risk. Martin v. North Star Iron Works, 31 Minn. 407, 18 N. W. 109; Choctaw, O. & G. R. Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24; Libby v. Scherman, 146 Ill. 540, 34 N. E. 801. This is especially true in view of the fact that plaintiff had not on that trip passed over the car on which the board protruded. He had not seen it, and knew nothing about it. He was there at night, when it was dark. The accident was therefore not the result of inattention to a known peril on the part of the person injured, as in Clark v. St. Paul & Sioux City R. Co., 28 Minn. 128, 9 N. W. 581. Moreover,

after the complaint by the transfer company the milling company forbade the continuance of the custom, and employed a man to carry away such boards during the day, although the unloading continued all night. The accident in question, it must be remembered, occurred in the nighttime. The effect of this order was in some measure to abate the danger. The plaintiff after the change did little work for the transfer company; was sick and not at work for some time previous to the accident. These circumstances constitute additional reasons for refusing to hold that as a matter of law he appreciated the danger and assumed the risk of the protruding board.

5. The transfer company also insists that two causes of action were improperly united. If this objection had been raised by way of answer or demurrer, this court would have been called upon to determine the question. Having raised the question for the first time at trial, and upon the admission of evidence, the defendant has waived it. Sections 5232, 5234, 5235, G. S. 1894; Pope v. Waugh, 94 Minn. 502, 103 N. W. 500.

6. The milling company only, and not the transfer company, raised the objection that the award of damages by the jury was excessive. The difficulties in practice as between the defendants, which might arise if the objection were sustained, constitute no sufficient reason for refusing to reduce or to set aside the verdict if the milling company be entitled to such relief. In the assessment of damages in cases of this character, no fixed rule can be laid down. Previous decisions of courts upon similar circumstances should be given due weight, inter alia, because counsel have a right to place some reliance upon them as guides to the amount proper in connection with negotiations for settlement. But in the nature of things the award in each case must be determined primarily by its own pertinent evidence.

The instant case, it is urged, is controlled by Slette v. Great Northern Ry. Co., 53 Minn. 341, 55 N. W. 137. There a verdict of $4,100 for a transverse fracture of a thigh bone was reduced to $2,100. In the case at bar the jury awarded $3,000 for a compound, comminuted fracture of the right leg, from which, because of skilful surgery, there was an excellent recovery, but which resulted in permanent injury. But here the left leg was also hurt, although after its consequent swelling had been lanced the injury does not seem to have been serious. Slette was

a sectionman, earning $35 per month. This plaintiff was a switchman, acting sometimes as a foreman, and receiving in the former capacity $3, and in the latter $3.30, per day of ten hours. Plaintiff was confined to a hospital from April 6 to July 3. At the time of trial, about a year after the accident, he was incapacitated from work. In accordance with the spirit and letter of the Slette case, and of the authorities generally, and in accordance with reason, it must be held that the verdict was not excessive.

We have examined and considered other assignments of error, and do not find them sufficient to justify reversal of order of the trial court.

The orders appealed from are affirmed.