# FRANK P. FAIRCHILD v. C. E. FLEMING.[1]

May 15, 1914.

Nos. 18,735—(64).

**Automobile — negligence of driver.**

1. The evidence examined and *held* to sustain a verdict that defendant's negligence in running his automobile in which plaintiff was a passenger caused the injuries complained of.

**Failure of judge to mark requests to charge jury.**

2. Failure of the court to mark requested instructions, as given or refused, is not reversible error where counsel completes final argument to the jury before calling the court's attention to the omission.

**Refusal to repeat in language of request.**

3. If the substance of a requested instruction is given in the general charge, error cannot be predicated upon a refusal to repeat the same thought in the language of the requested instruction.

**Complaint.**

4. The complaint herein, properly construed, alleged negligence not alone as to speed but as to the management or manipulation of the automobile.

**Proximate cause — concurrent cause — modification of request.**

5. Whether the defective floor of the bridge where the injury occurred was the sole proximate cause thereof, or whether such defect merely united or concurred with defendant's negligence to produce the injury, were questions for the jury and a requested instruction was properly modified to cover both questions.

**Inadvertence of court — duty of counsel.**

6. Where, through evident inadvertence, the court in stating the purport of a statute omits an exception or limitation contained therein, it is the duty of counsel then to call attention thereto. In this instance the omission is considered harmless.

**Statutory speed limit.**

7. The statutory provision relative to speed of motor vehicles (section 16,

[1] Reported in 147 N. W. 434.

---

Note.—On the question of evidence as to speed of automobile, see notes in 1 L.R.A.(N.S.) 239 and 34 L.R.A.(N.S.) 778.

chapter 365, Laws 1911), is for the benefit of all who may be injured in person or property from the unreasonable or excessive speed of such vehicles; it is a rule of evidence of general application whenever the question of unreasonable speed of motor vehicles is involved.

Action in the district court for Blue Earth county to recover $25,-000 for personal injury received while a passenger for hire in defendant's automobile. In his answer defendant alleged that he was not engaged in the business of a common carrier and that he carried plaintiff as an accommodation. The case was tried before Pfau, J., and a jury which returned a verdict for $4,600 in favor of plaintiff. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Hughes & Ellsworth* and *Charles Burke Elliott,* for appellant.

*A. R. Pfau, Jr.,* and *C. J. Laurisch,* for respondent.

HOLT, J.

On October 4, 1912, plaintiff while riding in an automobile owned and driven by defendant, was thrown out and seriously injured. He sued, alleging that defendant's negligence caused the injury, and recovered a verdict. This appeal is from the order denying a new trial.

These appear to be undisputed facts: Defendant was the owner of a 30 horse-power touring car in which he, for a small consideration, occasionally took his friends out on business or pleasure trips. Plaintiff, a friend and acquaintance of long standing, was in the real estate business, and had employed defendant a few times to take prospective purchasers out in this automobile to look at farms listed for sale. On the day in question defendant was so engaged in taking plaintiff and a customer or two around to various farms some distance from the village of Good Thunder, the home of both plaintiff and defendant. Near the old village of Vernon Center, Blue Earth river is crossed by a steel bridge. The span of the bridge is about 125 feet. The latticed girders or trusses are above the floor of the bridge. The driveway is about 12 feet in the clear. The bridge crosses the river from the direction of northeast to south-

west. As one approaches the river coming from the south the road turns northwesterly running close to and almost parallel with the river; and, when near the entrance to the bridge, there is a sharp turn to the right or to the northeast. At the turn the approach to the bridge is up grade. At the time in question the planking of the floor of the bridge proper and the 10 to 20 feet approach was so worn that it is spoken of as condemned, and over this planking had been laid and nailed an eight-foot driveway of two-inch planks. Some of the nails did not hold. A hole had also been cut in the planking near the southwest corner for the purpose of letting down concrete to repair the pier. This hole was covered by a piece of plank laid lengthwise with the bridge. Between two and three in the afternoon the party crossed this bridge going south and, when returning two or three hours later, in making the short turn to enter the bridge, the car struck the southwest corner post of the truss. The fenders and running board on the left side were broken or bent and the rear of the car seemed to have slewed towards the east or right so that it stood diagonally across. The rear right wheel was completely crushed, the man in the front seat with defendant was thrown against the windshield, and plaintiff and the other person in the rear seat were thrown a distance of 10 or 12 feet and injured.

The controversy at the trial centered, of course, upon the question of defendant's negligence. Each party produced testimony of admissions made by the other; plaintiff, to the effect that defendant acknowledged that he was driving too fast and defendant, that plaintiff stated on different occasions that it was an accident for which defendant was in no way to blame. In making the sharp turn, and up to the moment the car struck, plaintiff admits he was going 15 miles an hour. With this admission of speed in such a dangerous situation as is disclosed by the exhibits and the undisputed evidence, the finding of negligence as charged is justified. Occurrences of this kind happen in a second, and no wonder the minds of those concerned are left in uncertainty as to the precise manner thereof. Such is the case here. Plaintiff and his witness, Peterson, who sat with the driver, maintain that the left front wheel struck the slanting corner of the truss on the southwest corner of the bridge and slid

off, but because of thus being suddenly obstructed on the left side, the momentum of the car threw the rear thereof to the east with sufficient force to crush the wheel and throw plaintiff out; while defendant says the front wheel went past without striking the post but the rear slewed to the west, and he surmises that, the rubber tire of the rear left wheel striking the sill or truss, the rebound threw the rear to the east and thus the wreck was caused. And as physical proof of defendant's contention, the broken left running board and fenders are pointed to as well as lack of marks on the left front wheel. We shall not attempt to demonstrate which theory is correct from the physical conditions and results proven. The jury had a right to consider other testimony. At any rate the admitted physical facts do not demonstrate that the accident was not due to defendant's negligence or that plaintiff's theory of the cause is untenable. It is not out of place to suggest that the left front wheel may have struck the sill lying inside the truss or may have run up on the slanting post itself and glanced off without marking either wheel or hub or breaking the lamp; and further that it is difficult to imagine how an impact against the post of the truss would cause such a rebound as claimed by the defendant. If the impact had been so violent we should have expected the occupants of the rear seat to have been thrown out to the left into the river. There is no claim that the road was wet or slippery and the only excuse for the slewing of the car must be the excessive speed on a short turn, or such speed that the turn could not be made quickly enough to avoid striking the truss mentioned, or else that the defect in the planking of the bridge caught or deflected the front wheels. Either of the two first suppositions tend to prove negligence in running the car. The defendant's counsel insists that the last was the cause of the accident. But there is not a particle of testimony that the short piece of plank covering the hole near the truss was displaced or that any of the 8-foot planks in the driveway in any way interfered. In fact, it points to no physical feature in the floor of the bridge, and that was the only defect in it, which could have caught or swerved the car.

The refusal to call in another judge to try the case we pass without comment. And we cannot take the eminent counsel seriously when

error is assigned upon the omission of the court to mark as given or refused defendant's requested instructions until attention was called thereto after the charge was delivered. The record fails to show that counsel expressed any desire to have the requests marked before addressing the jury, and, of course, after the argument the omission could not be remedied so as to confer the benefit intended by the statute. Unless this right is demanded when it will serve a purpose, it must be deemed waived.

The court did not give this instruction requested by defendant: "The court instructs the jury that the plaintiff must prove by a fair preponderance of the evidence, the specific negligence alleged in his complaint; and unless you find from the evidence in this case that the plaintiff has so proved the negligence as alleged, and that such negligence caused the injury, your verdict must be for the defendant." On this proposition the court did charge: "The burden of proof, as we ordinarily say, is upon the plaintiff in this action; that is, it is necessary for the plaintiff, before he can recover in this case, to prove the allegations of his complaint, to prove the charge that he makes, to prove by a fair preponderance the allegations of his complaint fixing the charge of negligence upon the defendant in this case, by evidence that fairly outweighs the evidence opposed to it and produced against it." This seems in substance to be equivalent to the requested instruction. 3 Dunnell, Minn. Dig. §§ 9777, 9778, and cases therein referred to.

But it is also argued that the only negligence charged in the complaint is excessive speed and therefore the instruction asked for was more appropriate, for it points definitely to this specific negligence pleaded; and, in that connection, it is said that the court evidently misconstrued the complaint and permitted the jury to consider negligence not pleaded for error is assigned upon this part of the charge: "In other words, if the defendant at the time in question was negligently and carelessly operating his machine; either in the careless manipulation of it, or in running it at an excessive speed, and that such was the proximate cause of the injury, though that might have been helped by the condition of the bridge at the time in question, the defendant would still be liable." The speed as well

as the course of an automobile is under the control or manipulation of the driver. Whether speed is excessive or negligent depends upon how it should be controlled and steered in view of the course and condition of the road. It is plain that speed which would be clearly negligent if the driver made a sharp turn might be considered entirely safe and proper in going straight ahead. So that the charge of negligent or excessive speed must be taken in connection with the manner in which the driver steers or manipulates his car. Aside from this consideration the complaint, properly construed, does not confine the negligence alleged to speed alone. The allegations are: "Said defendant negligently, carelessly and wilfully drove said automobile in a reckless and careless manner, driving the said machine at the rate of from twenty-five to thirty miles per hour and while driving at such excessive speed, against the protest of this plaintiff and others, attempted to turn a sharp corner, all carelessly, negligently and wilfully and with utter disregard for the consequences caused said automobile by means of such reckless speed and such sharp angle of turning to be thrown against said bridge," etc. The accusation against the defendant is not alone negligence as to speed but also as to the manipulation or steering of the machine.

Defendant complains of the refusal to charge that, if the accident was caused by reason of the floor of the bridge being in a bad condition, which condition was not known and could not have been known by him in the exercise of ordinary care, and that, but for such condition of the floor, the accident would not have occurred, the verdict must be for defendant. The court charged upon that point in part as already above set out and in part as follows: "I will charge you that, if you find from the evidence in this case that the accident was occasioned by want of repair of the floor of the bridge and that the loose planks or timbers or holes there was the occasion of the accident, the machine striking and turning as it did, then I charge you that the plaintiff cannot recover in this action, unless you find that the condition of the bridge was in part the cause of the accident and that connected with it was the negligence of the defendant in running his automobile at the time in question." And again: "I will say to you that if the condition of the bridge was the proximate

cause of the injury, then there can be no recovery, unless you find as a concurrent cause the negligence of the defendant was also a proximate cause of the injury." The defendant was not entitled to the requested instruction without modification. Conceding that the floor of the bridge, through the negligence of some third person, was in a defective condition, it also does clearly appear that with care a continuous stream of travel was crossing in safety. The only defect seemed to have been that the original planking was worn so thin that there was danger of the feet of horses or wheels of vehicles going through. This danger was evidently obviated by the eight-foot planking for a driveway, laid on top of the old floor. The jury were therefore justified in concluding that with ordinary care defendant could have crossed without danger, that he did not exercise such care, and because thereof the injury resulted. The fact, if it be a fact, that the defect in the bridge combined with defendant's negligence to bring about the wreck, does not absolve defendant from liability to plaintiff. The jury had ample warrant for finding that the defective bridge floor was not the efficient intervening cause; and, if it had any bearing at all, that it merely united or concurred with defendant's negligence to cause plaintiff's injuries. Johnson v. Chicago, M. & St. P. Ry. Co. 31 Minn. 57, 16 N. W. 488; Bibb Broom Corn Co. v. Atchison, T. & S. F. Ry. Co. 94 Minn. 269, 102 N. W. 709, 69 L.R.A. 509, 110 Am. St. 366, 3 Ann. Cas. 459; Campbell v. Railway Transfer Co. 95 Minn. 375, 104 N. W. 547; and cases cited under 2 Dunnell, Minn. Dig. § 7006. This is not a case like Paquin v. Wisconsin Cent. Ry. Co. 99 Minn. 170, 175, 108 N. W. 882, or Atchison, etc. Ry. Co. v. Calhoun, 213 U. S. 1, 7, 29 Sup. Ct. 331, 53 L. ed. 671, "where, in the sequence of events between the original default and the final mischief an entirely independent and unrelated cause intervenes, and is of itself sufficient to stand as the cause of. the mischief."

Error is assigned upon the references in the charge to the statute concerning the speed of motor vehicles, section 16, of chapter 365, p. 499, Laws 1911. The charge in that respect is as follows: "Now there have been some statements made to you by counsel as to the law bearing upon the rate of speed of an automobile. I say to you that

the law is, that on a country road a rate of speed exceeding 25 miles an hour would be prima facie evidence of negligence on the part of the driver; in other words, that a rate of speed of 25 miles an hour upon a country road, outside of the city or a village would not be considered prima facie evidence of negligence; a speed of 25 miles an hour. The law provides also that in coming to a blind turn where the road is not visible beyond, that the speed should be reduced, if I remember aright, to six miles an hour (Am I correct in that, gentlemen? Counsel. Yes, I think so.) to six miles an hour, when making a blind turn in the road where they cannot see ahead; now whether this road and this turn was of that character or not is for you to determine from all of the evidence in the case before you; I do not charge you that it was necessary for the defendant on this occasion, at this turn to reduce his speed to six miles an hour, but I will charge you that it was necessary for him to reduce his speed so that he might with fair safety, under ordinary circumstances come up on the bridge, and make his turn, such as it was there." At the close of the charge counsel noted an exception "to that part of the charge of the court in regard to the six mile limit of speed. The evidence in this case shows this turn was wide open as far as seeing ahead is concerned." As to speed on country roads where curves or corners do not obscure the operator's view of the road traffic, the statute merely states that running more than 25 miles per hour for more than one-fourth of a mile shall be prima facie evidence of a greater speed than is reasonable or proper. So that the inaccuracy of the charge consisted in not stating the distance one can run before an inference of negligence may be drawn from speed exceeding 25 miles per hour. It is idle to speculate on the purpose of this exception of a quarter of a mile, which tends to make the speed regulation on a straight course of little or no value. Excessive speed would appear to be as dangerous to those exposed thereto within a distance of a quarter of a mile, as to those beyond that distance. But the potency of this law as a protection is not involved. The only question is, did the court err in referring to it at all, and, if so, was the omission of the exception reversible error? It would appear from the charge that counsel, in the argument to the jury, had referred to the law and the court was

thereby impelled to call the attention of the jury to the subject. It is true the jury were told that the evidence tended to show that the speed immediately prior to striking the bridge was between 15 and 25 miles per hour. If that were so, there was no occasion to refer to the part of the statute now in question. Plaintiff, however, testified that the speed was over 25 miles per hour. He was the only witness who so testified, and he also claimed this rate was maintained for more than one-fourth of a mile. So that if plaintiff's version was accepted by the jury, no prejudice could result from omitting the exception. If the other testimony prevailed, the jury could not apply the statute at all and the omission of the exception became immaterial. But, aside from that, the omission of the clause referred to ought to have been called to the court's attention at the time. It was a plain inadvertence on the part of the court, and counsel, undoubtedly fully aware of the correct reading of the statute, should then have spoken if the inaccuracy was deemed of any importance.

The reference in the charge to the speed at corners and curves where the view of the traffic is obstructed is more troublesome. From the manner in which the exception to the instruction was taken at the trial, it is clear that here also the court was not directed to the inaccuracy in stating the import of the statute, but the ground of complaint was, and is, that no corner or curve existed at the place of accident to which the statute could apply. And on this appeal it is also claimed that this plaintiff is in no event entitled to the benefit of the presumption of negligence arising from the running of the car at a greater speed than 6 miles per hour in making the turn in question. As we look at the photographs and drawings introduced in evidence, we are impressed with the thought that it cannot be said as a matter of law that the place of accident was not a "curve in a highway, where the operator's view of the road traffic is obstructed." It is true that, in approaching the curve, defendant had a view of the bridge, but to some extent the view of the traffic thereon was obstructed by the large beams and braces in the truss or span of the bridge. Especially towards dusk or in the dark would traffic be difficult to detect by one approaching as defendant did.

Is plaintiff one who can take advantage of this statute in estab-

lishing negligence? In speaking of a statute imposing a duty on railroads to fence their tracks and the extent of its protection Justice Mitchell, in Rosse v. St. Paul & Duluth Ry. Co. 68 Minn. 216, 71 N. W. 20, 37 L.R.A. 591, 64 Am. St. 472, says: "It may be conceded that, in an action for a neglect of duty, it is not enough for the plaintiff to show that the defendant neglected a duty imposed by statute, and that he would not have been injured if the duty had been performed, but that he must also show that the duty was imposed for his benefit, or was one which the defendant owed to him for his security. But the question for whose benefit or protection a statutory duty was imposed depends on the purview of the legislature in the particular statute, and the language which they have there employed." Anderson v. Settergren, 100 Minn. 294, 111 N. W. 279: We have no doubt that section 16, chapter 365, p. 439, Laws 1911, in relation to the speed of motor vehicles, was intended to protect the public generally against the dangerous speed of which motor vehicles are capable of being run, and does not exclude those who might be riding with the one guilty of driving at excessive or unreasonable speed. Nor, in view of the public protection intended by the law, should it be held that the six mile per hour clause does not apply to a corner or curve upon which the operator's view of the traffic is obstructed, unless travelers happen to be thereon and then only to injuries resulting from collision with them. The language both in regard to speed exceeding 25 miles an hour and 6 miles an hour on view-obstructed corners and curves is indicative of a purpose to secure a speed from the operators of motor vehicles which will not "endanger the life or limb or injure the property of any person." As to persons, the scope of the protecting regulation is as all-embracing as language can make it. Nat. Casket Co. v. Powar, 137 Ky. 156, 125 S. W. 279. Moreover, it is to be observed that the statute creates no duty on the part of an automobile driver to conform to a specified rate of speed, but simply furnishes a rule of evidence in proving negligent or improper speed. Such rule is general in application and not restricted to any class, or person, or form of lawsuit. The court clearly put to the jury that, regardless of this statute, it was the duty of defendant "to reduce his speed so that he might with fair

safety, under ordinary circumstances, come up on the bridge, and make his turn, such as it was there." This was the correct rule. We conclude that on the whole defendant has had a fair trial and that no substantial error has affected the verdict.

Order affirmed.