[No. 20848.   Department One.   December 6, 1927.]

## Roy MAUS, *Respondent,* v. R. G. PURVES *et al., Appellants.*[1]

[1] HIGHWAYS (53, 59)—NEGLIGENT USE OF MOTOR VEHICLE—MEETING AND PASSING—INSTRUCTIONS. An instruction is properly given that auto drivers shall seasonably turn to the right of the center of the road so as to permit each vehicle to pass without interfering with another, where it appears that a stage driver attempted to pass a Ford and continued on the left side of the center of the road in an unsuccessful attempt to pass, having in full view for a quarter of a mile an approaching car with which it collided, there being no room for it to turn out.

[2] SAME (52, 59)—NEGLIGENT USE OF MOTOR VEHICLE—SPEED—INSTRUCTIONS. Rem. Comp. Stat., § 6339, making it unlawful to operate a motor vehicle, carrying passengers for hire and having a capacity of more than ten passengers, faster than twenty-five miles over an unpaved road, may be invoked by any one who can show that its violation was involved in the proximate cause of his injury, in the absence of contributory negligence.

[3] DAMAGES (87)—EXCESSIVENESS—IMPAIRMENT OF EARNING CAPACITY. A verdict for $3,250 for personal injuries sustained by a railroad brakeman forty years of age, earning $200 to $225 monthly, is not excessive where a severe blow on the head resulted in permanent impairment of vision, and he lost one of his fingers, preventing the following of his usual avocation.

Appeal from a judgment of the superior court for King county, Moriarty, J., entered April 9, 1927, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained in an automobile collision. Affirmed.

*Van Dyke & Thomas,* for appellants.
*Martin J. Lund,* for respondent.

MITCHELL, J.—This action arose out of a collision between a Dodge coupe, owned and driven by Roy Maus, and a stage, owned and driven by R. G. Purves.

[1] Reported in 261 Pac. 782.

The collision occurred on a graveled highway running from Bremerton, Kitsap county, southwesterly to Union City, Mason county, about four o'clock in the afternoon, May 26, 1926. It occurred near half way on a straight stretch of about nineteen hundred feet of the highway. The stretch of the highway is raised from two to four feet from the level of the ground on either side, the surface of the road being slightly oval. The traveled portion of the highway was twenty-four feet wide and so constructed that it was unsafe to drive off either side of the traveled portion of it. It had been raining that afternoon and, at the time of the accident and for several minutes before, there was what the witnesses termed a squall. The stage, carrying thirteen passengers, was going from Bremerton, the coupe towards Bremerton.

Roy Maus brought the suit to recover on account of injuries to his person and property, alleged to have been caused by the negligence of the defendant. The answer was a general denial and contributory negligence, the latter being denied by the plaintiff. There was a verdict for the plaintiff which, being reduced by the court as a condition for denying a new trial, accepted by the plaintiff, was put into judgment against the defendants, from which they have appealed.

The stage was trying to pass a Ford automobile at the time of the accident. Other facts may be understood from the testimony of witnesses. The respondent testified:

"Well, we came around that curve there, and I saw the stage and another car coming, and the stage was trying to pass the other car, and I think to myself, it is the stage, and as they came up closer I saw they were still trying to race, and the Ford did not seem to let the stage by, and as they came nearer I thought the stage driver was going to drive over, and I gave

him the benefit of the doubt and I slowed up. I was not going over twenty-five or thirty miles an hour, and I slowed up to about twenty miles an hour the last I looked at the speedometer along there, and I was giving the stage driver the benefit of the doubt and thinking he was a good driver and he would come up ahead of me and throw a little dirt in my face, and let it go at that. He had gained on the Ford, and I thought he would turn in and get in there, but the next I remember he was about thirty feet in front of me, maybe, and I tramped on the brakes and I guess I skidded; I do not remember anything after that. I do not remember hitting the stage or the stage hitting me.''

He further testified that, when he first saw the stage and Ford, they were a good quarter of a mile away; that he was driving about twenty-five miles an hour; that the stage was running on its left hand side of the road and did not turn from its left hand side of the road before the collision; that there was a ditch on the stage's left hand side of the road; that there was not room for him to pass between the stage and the ditch; that the stage was running thirty-five to forty miles an hour and that it did not slacken its speed at all before it hit him.

A person in the coupe with the respondent testified that the respondent drove carefully, never over thirty miles at any time, and that the stage ''was on the left hand side of the road. They were meeting us on our side of the road. It was on our right hand side.''

Only one passenger on the stage was a witness at the trial. Being called on behalf of the respondent he testified: ''He (Purves) was driving at a rate I would consider rather reckless rate of speed,'' and that on account of the reckless driving he looked a number of times for the speedometer, but could not see any; that the driver always took the inside of the curves and that when the stage came around the curve ''I saw

the coupe about a quarter of a mile away." Upon being asked to tell how the accident happened he said:

"Well, Mr. Purves driving the stage, attempted to pass the Ford. The gravel on this side was rather wet and the impression I got he could not pick up enough speed to pass the Ford; and they were traveling at approximately 35 miles an hour in my estimation, and they kept on at that speed. He kept practically abreast of the Ford until he came within about seven hundred feet from the coupe, from where the coupe was when we first seen the coupe and that brought the coupe up within about thirty-five feet of where the accident occurred. At that time I did not notice where the Ford was. I seen it was certain there was going to be an accident, or something would happen. I wondered what the coupe would do. It passed through my mind, and the next instant I noticed the coupe started to skid and he skidded around and came in directly in front of the stage. The stage hit the coupe and knocked it toward the bay again. Q. From the time you first saw the coupe and until the stage smashed into it, on what side of the road was the stage running? A. On the left hand side."

He further testified that the stage was running approximately three feet from the ditch on the left hand side of the road and that there was no room for the coupe to pass between the ditch and the stage; and that the stage never slackened its speed until it struck the coupe, the stage running all the time about thirty-five miles an hour.

Appellant Purves estimated the speed of respondent's coupe at more than thirty-five miles an hour. He admitted he did not have a speedometer on the stage and that he

". . . was over just a little bit to the left of the center of the road. Q. How fast did you go, including the increase, if any, in the rate of speed in passing the Ford? A. About thirty miles an hour, not over that."

The collision occurred a few feet beyond a culvert

as the stage was traveling, and, in cross-examination, appellant Purves testified as follows:

"Q. And how far were you ahead of the Ford when you came up to the culvert? A. I got past the Ford about two hundred feet; that is he was on my right and behind. Q. And you saw the Dodge car coming down this way? (indicating on map) A. I saw the Dodge on that little knoll three hundred and seventy odd feet from the culvert. . . . Q. But did you go over to the right hand side of the road? A. I did not get over there . . . I had thirteen passengers, I was not hurt. Someone got the names and addresses of the passengers and made a report to the sheriff and to Shelton."

Other testimony showed that the Ford was running from three to four feet from the right hand side of the road and the stage, which was "not less than seven feet wide," was running from three to four feet on the left hand side of the Ford.

[1] The first assignment of error arises upon an instruction to the jury to the effect that, whenever persons driving vehicles on any highway in this state shall meet, they shall seasonably turn their vehicles to the right of the center of the road so as to permit each vehicle to pass without interfering with or interrupting the other. Counsel for the appellants admit in their argument that,

" . . . if the stage was not passing another car or obstacle in the highway but was over on the left hand side of the road as the stage was traveling, then the instruction would be appropriate."

However, it is sought to maintain the alleged inappropriateness of the instruction because of subdiv. 2 of § 6340, Rem. Comp. Stat. [P. C. § 222], which is as follows:

"Vehicles proceeding in the same direction on overtaking another vehicle . . . shall pass to the left . . . but it shall be unlawful for any person to pass any moving vehicle . . . overtaken unless he has

a clear view ahead of not less than two hundred yards."

Manifestly, the statute relied on does not have the dominating importance claimed for it by the appellants. It does not say that the overtaking vehicle shall have two hundred yards within which to pass another, but that it shall not pass unless there is a clear view ahead of that distance. Other travelers upon the highway have rights that must be considered in construing and applying this statute. Mr. Purves, who was entirely familiar with the roadway, admitted that, when he first saw the approaching coupe, it was eleven hundred feet distant. At that time, as he claims, after having given the passing signal he had been trying for some two hundred yards to pass the Ford, increasing his speed, and yet he continued the contest with the Ford, the two taking practically all of the roadway until the collision occurred, at which time the respondent was on his right side of the road. The question arises, how long shall an overtaking driver continue such a contest? And again, what was the respondent to do, what could he do? Manifestly when the driver of the stage found he could not pass the Ford in time for the safety of the approaching coupe it was his duty to have seasonably dropped behind the Ford.

[2] Another instruction complained of was as follows:

"That it is unlawful to operate or drive any motor vehicle used for carrying passengers for hire and having a capacity for more than ten passengers at a speed faster than twenty-five miles per hour, on or over any unpaved highway."

The instruction is in the language of a part of § 6339, Rem. Comp. Stat. [P. C. § 219], and, in our opinion, applicable to the case being tried. The contention on behalf of the appellant is, that the purpose of the

statute is primarily for the safety of passengers on a stage and secondarily for the preservation of the highway, and that it is not intended for the benefit, safety or protection of other travelers on the highway, and that therefore the giving of the instruction was confusing and prejudicial. We cannot adopt that view. The state is just as much interested in protecting the lives and limbs of non-passengers as it is in protecting those of passengers on a stage. The statute imposes a positive rule of conduct upon all such stage drivers and may be invoked by any one who can show that its violation was involved in the proximate cause of his injury, in the absence of contributory negligence on his part. *Singer v. Martin*, 96 Wash. 231, 164 Pac. 1105; *Fairchild v. Fleming*, 125 Minn. 431, 147 N. W. 434; *Meenach v. Crawford*, 187 S. W. (Mo.) 879; 1 Blashfield's Cyc. of Automobile Law, p. 357, § 20; Huddy on Automobiles (8th ed.), pp. 376-7.

[3] Lastly it is claimed the verdict and judgment are excessive. Upon a comparatively small reduction by the court of the amount awarded by the jury, the judgment was in the sum of $550 for damage to the coupe, being well within substantial proof upon that part of the case, and $3,250 for personal injuries. The respondent was badly hurt in the accident. There was abundant proof of a severe blow on his head permanently affecting both eyes, leaving one of them with only about sixty per cent vision. Another injury caused the permanent loss of one of his fingers. leaving him altogether unfit to successfully follow his usual avocation as a brakeman on logging trains. At the time of his injuries he was forty years of age and earning two hundred and twenty-five dollars per month and board. The judgment will not be disturbed.

Affirmed.

MACKINTOSH, C. J., TOLMAN, FRENCH, and PARKER, JJ., concur.