MARVIN SCHROEDER v. WILLIAM STREED, JR.[1]

May 26, 1950.

No. 34,607.

*Mogren & O'Donnell,* for appellant.

*Freeman, King, Larson & Peterson* and *William M. Hull,* for respondent.

[1]Reported in 42 N. W. (2d) 816.

MAGNEY, JUSTICE.

This is an appeal from a judgment entered upon a directed verdict for defendant.

Sixty-sixth street in Richfield runs east and west. James avenue enters it from the north and ends there. A "T" intersection is thus formed. Sixty-sixth street is black-topped to a width of about 20 feet with shoulders three to four feet wide. There is no sidewalk on Sixty-sixth street, and the intersection is level. James avenue has a graveled surface about 25 or 30 feet wide. South of Sixty-sixth about three and one-half or four feet from the shoulder and about two and one-half feet from the east line of James avenue is a telephone pole. Around this pole is a level depression about 10 to 15 feet in diameter and about one foot lower than the shoulder. From the shoulder the ground gradually slopes south down into a swamp, which is seven to ten feet lower than Sixty-sixth street. There are no houses on the northwest or the northeast corners of the intersection, nor are there any south of Sixty-sixth street in the vicinity. As one approaches James avenue from the east, it is possible to see from half a block up James. There is no stop sign on James.

On September 28, 1945, at about 5:30 p.m., defendant, then 16 years of age, was driving his car west on Sixty-sixth street. Robert Welin, about the same age, was his passenger. He approached James avenue at a speed of 28 to 35 miles per hour, according to his own testimony, driving on the right half of the street, with the left-hand wheels near the center line. When he was about half a block east of the avenue, he saw a truck coming east about a block west of the avenue. He did not see anything peculiar about the truck's operation. He saw no other car and claims that he did not observe anything else on the highway nor on the side of it. When about 20 or 30 feet east of James avenue, he claims that he looked to his right for two or three seconds to see if any traffic was approaching. At that time, Welin, the passenger, yelled "Look out." Defendant turned his head to the left and saw plaintiff near the car. As he turned his head to the left, his car was not quite halfway into the middle of James avenue, and the boy was running toward the car

only a few feet away, probably five feet. He said, "I just seen a flash when I turned my head to see what was the matter." Defendant put on his brakes and turned the steering wheel to the right. His brakes were in good condition. The car turned to the right, crossed over to a vacant lot, and entered it from James avenue, about six feet north of Sixty-sixth street. A skid mark about 15 or 16 inches long was noticed after the accident just east of James avenue and about four feet in from the north edge of the tarvia. The car stopped about 130 to 150 feet from the skid mark. The boy, then four and one-half years old, was lying about one and one-half or two feet from the north edge of the tarvia on the shoulder about 40 feet west of James avenue and about 60 feet west of the skid mark. The left front fender had a small dent in it, and some hair and blood were found on the broken front headlight, according to testimony in behalf of plaintiff. Defendant's witnesses claim that the headlight had been broken prior to the accident and that no additional damage was done to it on the present occasion. Defendant claims that the boy, running diagonally in a northwesterly direction, ran into the side of the left front fender. When he had completed the turn of the car and saw that he was clear of the boy, he "let up" on the brake and allowed the car to coast into the field, which he claims accounts for the fact that the car traveled so far after the accident. As defendant was walking over to the injured boy immediately after the accident, he saw two small children across the street. He helped them across the street and told them to go home. On the above state of the record, the court directed a verdict for defendant. Plaintiff contends that the evidence presented a jury question and that the court erred in its ruling.

Defendant testified that he was traveling from 28 to 35 miles an hour, thus admitting that he was exceeding 30 miles per hour. From the distance the car traveled after it came in contact with the boy, the kind of terrain over which it traveled, and the skid marks, a jury could readily find that he was traveling considerably over 30 miles an hour. M. S. A. 169.14, subd. 2, declares that if a driver exceeds 30 miles an hour in a municipality he is prima

facie negligent. Since on defendant's own admission the jury could find that he was operating his car at an unlawful speed, the question remains whether it could also find that such negligence, if any, was the proximate cause of this accident.

After the accident, the boy was found about one and one-half feet from the north edge of the tarvia on the shoulder and about 40 feet west of James avenue and about 60 feet west of the skid mark. If, as defendant claims, the boy ran into the side of the left front fender when the car was not quite halfway into James avenue, and that when he saw the boy he was only about five feet away or less, which would give defendant scant time to turn the car or do anything, it is difficult to understand how the boy could finally come to rest north of the tarvia and 40 feet west of James avenue, unless he was struck by the front of the car. If he had run into the fender, as claimed by defendant, the law of physics, it would seem, would not operate to throw the boy forward for such a distance and to the right and north of the line of travel of the car. These facts could indicate that the boy was hit by the front of the car after the car had been turned slightly to the right. As some hair and blood were found on the broken front headlight, according to plaintiff's witnesses, and as the doctor testified that glass was found in the boy's wounds, it also raises a question whether the boy ran into the left front fender, as claimed by defendant, or was run into by the car, as claimed by plaintiff. The jury could readily find that the boy was hit by the front of the car, and that when he was hit he was over the center line of Sixty-sixth street.

Plaintiff claims that defendant, in addition to being negligent in operating his car at an excessive and unlawful rate of speed, was negligent in failing to keep a proper lookout ahead. Immediately after the accident defendant saw two children standing near the telephone pole. He helped them across the street. As stated, the jury could readily have found that plaintiff had passed the center line of Sixty-sixth street, and that he was struck by the front of the car. Defendant and his passenger claim they did not see the two children near the pole, nor plaintiff, until the moment

of collision. It would seem that the presence of the children, at least the presence of plaintiff, should have been known by defendant prior to the time that he admits seeing him. There was nothing to obscure his vision. In our opinion, it was a question for jury determination whether defendant kept a proper lookout ahead. See, Converse v. Adleman, 153 Minn. 306, 190 N. W. 340; Roberts v. Ring, 143 Minn. 151, 173 N. W. 437; Hollander v. Dietrich, 181 Minn. 376, 232 N. W. 630. From the facts as detailed, given a version most favorable to plaintiff, as is proper, we are of the opinion that the court should have submitted for jury determination the two items of negligence which have been discussed, and the question whether the negligence of defendant, if any, was the proximate cause of this accident.

Judgment reversed.

MR. JUSTICE THEODORE CHRISTIANSON, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.