SHIRLEY M. BUTLER v. DONALD J. ENGEL.
ROBERT DALY, A MINOR, BY ROSE DALY,
HIS MOTHER, v. HANS ROSACKER
COMPANY AND OTHERS.[1]

December 24, 1954.

Nos. 36,299, 36,300.

---

[1]Reported in 68 N. W. (2d) 226.

318

*Mahoney & Mahoney,* for appellants.

*Meagher, Geer, Markham & Anderson, David W. Nord,* and *O. C. Adamson II,* for respondent.

KNUTSON, JUSTICE.

These cases arise out of a collision which occurred on September 6, 1951, between a Mercury automobile driven by Donald Engel in which plaintiff Robert Daly was riding as a guest passenger and a three-ton Dodge delivery truck driven by Richard Butler as an employee of Hans Rosacker Company. The collision took place on East River Road (also called Marshall street northeast) within the corporate limits of the village of Fridley at a point one and four-tenths miles north of Thirty-seventh avenue northeast and one and one-tenth miles south of the intersection of East River Road and state highway No. 100. Thirty-seventh avenue is the boundary line between Minneapolis and Fridley. East River Road, running north and south between Thirty-seventh avenue and state highway No. 100, is a two-and-one-half-mile-long four-lane concrete highway in good

condition, with the two northbound lanes separated from the two southbound lanes by a 48-foot boulevard. Each of the north and southbound double lanes is 24 feet in width. East River Road is practically level and has only one intersecting street, namely, Forty-third avenue, but it has crossovers between the north and southbound lanes. There is only one moderate curve; it does not interfere with visibility. There were no other obstructions to the driver's visibility at the scene of the accident, which occurred about 11 a. m. on a clear, dry day. No other cars were noticed in the northbound lanes at the time of the accident.

The area adjoining East River Road is not urban in appearance. The Northern Pump Company factory, which is surrounded by a high wire fence, contains the only buildings east of the River Road and adjacent to it between Thirty-seventh avenue northeast and the place of the accident. From state highway No. 100 to Thirty-seventh avenue, on the west side of the River Road, there are only a few homes, a gas station and parking area, and a collection of farm buildings which are adjacent to the road. There are no speed signs on either side of the road.

Defendant Engel entered the River Road from state highway No. 100 and drove south to Thirty-seventh avenue, where he made a turn and entered the northbound portion of the road. Upon proceeding north he passed a sign marking the southernmost boundary of Fridley, which was located 98 feet north of the center of Thirty-seventh avenue. He stated that he did not recall seeing the sign the day of the accident. Engel suffered an amnesia and was unable to give any testimony of value. Butler was killed in the accident, so the only real witness to the accident was plaintiff Daly who was riding with Engel. He testified in substance that, while traveling northerly to the point of the accident, Engel's car was traveling at a speed of from 40 to 50 miles per hour. The car traveled mostly in the right-hand lane, although the left wheels may have been over the center line between the northbound lanes.

About 300 or 400 feet south of the main entrance to the Northern Pump Company, Daly sighted the truck driven by Butler, which

had been traveling south on East River Road. When he first sighted it, it was completing a left turn at about ten miles an hour into a crossover just opposite the main entrance of Northern Pump Company. At that time Engel, whose view was unobstructed, released his foot from the accelerator, and the car slowed down slightly. It is not known whether the brakes were applied at this point. The truck's rear wheels were just leaving the southbound lane when Daly first noticed it. As the truck completed its turn into the 48-foot crossover connecting the north and southbound lanes and had reached about the middle of the crossover, it appeared to slow down to about five miles per hour. Engel, who was then about 150 or 200 feet from the truck, resumed his speed of about 40 or 50 miles per hour.[2] The truck then speeded up and began to cross the northbound lane. Engel, then about 75 or 100 feet from the truck, which was at the west edge of the northbound lane, applied his brakes and began to turn his car to the right. The sound of the brakes was first audible to a Northern Pump Company guard at the gate when Engel's car was about 35 or 40 feet from the point of impact. The vehicles collided near the easterly edge of the highway in front of the main driveway to the Northern Pump Company yard. The left front of Engel's car struck the right side of the truck at a point two or three feet from the truck's right front corner just ahead of the right front wheel.

An action was brought on behalf of Daly, who was a minor, by his mother, against Hans Rosacker Company, Kvalheim as the administrator of Butler's estate, and Engel. Engel cross-claimed against Hans Rosacker Company and the administrator of Butler's estate for personal injuries and property damage. The trustee for the heirs of Butler brought suit against Engel for the wrongful death of Butler. The actions were consolidated and tried together. The jury determined that Butler was negligent and that Engel was not neg-

---

[2]There is some testimony from a Northern Pump Company guard, who observed Engel's car about 35 or 40 feet before the point of impact, that the car was traveling at a speed of from 50 to 70 miles per hour, but we are assuming that Daly was right and that the car was traveling 40 to 50 miles per hour.

ligent. Damages were awarded to Engel against Hans Rosacker Company and the administrator of Butler's estate. Damages against the same parties were also awarded to Daly, who was held, as a matter of law, not to have been guilty of contributory negligence. The action begun by the trustee for Butler's heirs was dismissed. Hans Rosacker Company and the administrator of Butler's estate appealed from an order denying their motion in the alternative for judgment notwithstanding the verdict or for a new trial. The trustee for Butler's heirs also appealed from an order denying a motion in the alternative for judgment notwithstanding or for a new trial. The appeals have been heard together here.

It is the main contention of appellants that Engel was guilty of negligence as a matter of law and that the court erred in its instructions to the jury with respect to the question of Engel's negligence and also with respect to the forfeiture of the right of way which Engel otherwise had. Engel contends that it was for the jury to determine whether he was guilty of negligence.

With respect to the effect of speed in the determination of negligence, the court instructed the jury as follows:

"* * * Where no special hazard exists, the following speed shall be lawful but any speeds in excess of such limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful; except that any speed limit within any municipality shall be an absolute speed limit, and any speed in excess thereof shall be unlawful. At the time and place of this collision, a speed limit of thirty miles an hour was the lawful speed limit, and under the law any speed in excess of thirty miles an hour is considered prima facie evidence that the speed is not reasonable or prudent and that it is unlawful.

"The term prima facie means that a speed of thirty miles an hour—a speed in excess of thirty miles an hour would be presumptive evidence that is standing alone would make for negligence, a speed in excess of thirty miles an hour, but it creates an inference or presumption of negligence. The inference or presumption is not conclusive, it is rebuttable and it may be that under all the facts and

circumstances as shown by the evidence that a speed in excess of thirty miles an hour in a municipality would be a reasonable and a prudent speed."

■ The principal question for our determination here is whether a speed in excess of 30 miles per hour within a municipality is only prima facie evidence of negligence or whether it is negligence per se under our present statute. In proceeding to a determination of this question, it must be kept in mind that the maximum speed limit under the statute at the place where the accident happened was 30 miles per hour. It must also be kept in mind that we are proceeding on the theory that the evidence is conclusive that Engel was driving from 40 to 50 miles per hour, a speed greater than the maximum speed limit provided by the law.

The law in this state from early times has been that the violation of a statute intended for the protection of the party injured is negligence per se unless the statute makes it prima facie evidence of negligence. 13 Dunnell, Dig. (3 ed.) § 6976; Schaar v. Conforth, 128 Minn. 460, 151 N. W. 275; Wessman v. Scandrett, 217 Minn. 312, 14 N. W. (2d) 445; Flaherty v. G. N. Ry. Co. 218 Minn. 488, 16 N. W. (2d) 553; 19 Minn. L. Rev. 686.

Our statutes regulating speed of motor vehicles have been amended frequently as driving conditions have improved and faster driving has become more feasible. Our case law has developed in the light of the statutes as they existed when the case was decided. It therefore is not possible to apply our decision law to subsequent cases without having in mind these statutory changes.

A brief review of the development of our present statutes may be of some help in determining the question now before us.

There appears to have been no speed limit established by statute prior to 1903 when an absolute speed limit was established for certain localities and conditions by L. 1903, c. 356, § 1.[3] This became

---

[3]"No person, driver or operator in charge of any automobile, motor vehicles or motor cycle on any public road, highway or street within the state shall drive, operate, move, or permit the same to be driven, operated or moved at a rate of speed faster than eight (8) miles per hour within the thickly settled or business portion of any city or village within this

R. L. 1905, § 1275. The term "reasonable and proper" as related to speed was first introduced by L. 1909, c. 259, § 16.[4] L. 1911, c. 365, § 16, first declared that a speed in excess of the stated speed in the statute should be prima facie evidence that the person operating such motor vehicle is going at a speed greater than is reasonable and proper.[5] This statutory provision was retained until 1927.

state, nor outside of such thickly settled or business portion of any city or village on any public road, highway or street, at a rate of speed faster than twenty-five (25) miles per hour, nor over any crossing or crosswalk within the limits of any city or village, at a rate faster than four (4) miles per hour when any person is upon the same."

[4]"No person shall operate a motor vehicle on the public highways of this state at a rate of speed greater than is reasonable and proper, having regard to the width, condition and use of the highway at the time and the general and usual rules of the road, or so as to endanger property or the life or limb of any person. *Provided,* that upon approaching a dam, bridge, sharp curve or steep descent, and also in traversing such dam, bridge, sharp curve or descent, and upon approaching a crossing or intersecting highway or in passing from a side street into a main thoroughfare where persons or vehicles are not plainly discernable, a person operating a motor vehicle shall have such vehicle under perfect control and the rate of speed shall not exceed one mile in eight minutes, nor on any street or highway shall the rate of speed exceed twenty-five miles per hour."

[5]"No person shall drive a motor-vehicle upon any public highway of this state at a speed greater than is reasonable and proper, having regard to the traffic and use of the highway, or so as to endanger the life or limb or injure the property of any person. If the rate of speed of any motor-vehicle, operated on any public highway in this state, where the same passes through the closely built up portions of any incorporated city, town or village, or where the traffic is more or less congested, exceeds ten (10) miles an hour for a distance of one-eighth of a mile, or if the rate of speed of any motor-vehicle, operated on any public highway of this state, where the same passes through the residence portions of any city, town or village, exceeds fifteen (15) miles an hour for a distance of one-eighth of a mile, or of the rate of speed of any motor-vehicle operated on any public highway in this state, outside the closely built up business portions, and the residence portions of any incorporated city, town or village, exceeds twenty-five (25) miles an hour for a distance of one-quarter of a mile, such rates of speed shall be prima facie evidence that the person operating such motor-vehicle is running at a rate of speed greater than is reasonable and proper, having regard

See, G. S. 1913, § 2635; G. S. 1923, § 2709; L. 1925, c. 416, § 10.

It was held in Fairchild v. Fleming, 125 Minn. 431, 147 N. W. 434, construing L. 1911, c. 365, § 16, that it was proper to instruct the jury that exceeding the prescribed limits was prima facie evidence of negligence.

L. 1927, c. 412, was derived partly from a "Uniform Act Regulating Traffic on Highways" adopted by the National Conference of Commissioners on Uniform State Laws in 1925. See, 11 Uniform Laws Annotated 3, 6.[6] The wording of our statutes as they then existed was changed somewhat, but in general the effect of it remained the same.[7]

L. 1937, c. 464, repealed L. 1927, c. 412, and again was partially patterned on a 1930 revision of the uniform law. The uniform act,

to the traffic and use of the way, or so as to endanger the life or limb or injure the property of any person.

"If the rate of speed of a motor-vehicle, operated on any public highway in this state, in going around a corner or curve in a highway, where the operator's view of the road traffic is obstructed, exceeds six (6) miles per hour, such rate of speed shall be prima facie evidence that the person operating such motor-vehicle is running at a rate of speed greater than is reasonable and proper, having regard to the traffic and the use of the way, or so as to endanger the life or limb or injure the property of any person."

[6]The Uniform Act Regulating Traffic on Highways was declared obsolete by the National Conference of Commissioners on Uniform State Laws in August 1943 and is no longer recommended by the Conference for adoption by the states. See, Handbook of the National Conference, 1943, p. 69; 11 Uniform Laws Annotated (pocket part) 7.

[7]"Sec. 4(a)  Any person driving a vehicle on a highway shall drive the same at a speed not greater than is reasonable and proper, having due regard to the traffic, the surface and width of the highway, and of any other conditions then existing.

"(b) Operating a vehicle at speeds exceeding those hereinafter specified shall be prima facie evidence that the operator of said vehicle is driving the same at a speed greater than is reasonable and proper as defined in subdivision (a) of this section: [Thereafter authorized speeds are stated both within and without a municipality.]

"(c) Municipalities in their respective jurisdictions are hereby authorized in their discretion to increase the speed which shall be prima facie unlawful upon 'thru' highways at the entrances to which vehicles are by

however, established an absolute speed limit,[8] and we retained the prima facie rule substantially as it had been before.[9] .

Until the passage of L. 1939, c. 430, the prima facie effect of exceeding prescribed speed limits applied to speeds within as well as without municipalities. Substantial changes in the traffic act were made in the 1939 act. As far as here material, the speed-limit provisions, § 6 (M. S. A. 169.14, subds. 1, 2), read:

"(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and

ordinance of such municipalities required to stop before entering or crossing such 'thru' highways. Municipalities shall place and maintain upon all 'thru' highways as to which such speed is so increased adequate signs giving notice of such special regulations and shall also place and maintain upon each and every highway intersecting any such 'thru' highway, appropriate stop signs which shall be illuminated at night or so placed as to be illuminated by the headlights of an approaching vehicle or by street lights."

[8]See, 11 Uniform Laws Annotated, § 20(b).

[9]"Sec. 28(a)  No person shall drive a vehicle on a street or highway at a speed greater than is reasonable and prudent under the conditions then existing.

"(b) The Commissioner is authorized and empowered to determine and establish on any street or highway, or any portion thereof, limited speed zones, which speed limits shall constitute the maximum speed at which any person may drive or operate any vehicle upon such zoned street or highway or portion thereof so zoned and on which the maximum speed permissible in said zone has been conspicuously posted by signs adopted as provided in Article III of this act; provided that the maximum speed on streets not otherwise zoned in municipalities shall be 30 miles per hour. Any speed in excess of the maximum speed posted as herein provided shall be prima facie evidence that the speed is not reasonable nor prudent and that it is unlawful.

*    *    *    *    *

"(g) Where no special hazard exists on any section of street or highway outside of a municipality which section is not zoned and posted as hereinbefore provided, the following speeds shall be lawful, but any speed in excess of said limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful:

"1.  Thirty miles per hour in any business or residence district outside of a municipality.

"2.  Forty-five miles per hour under other conditions."

having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

"(b) Where no special hazard exists the following speeds shall be lawful but any speeds in excess of said limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful; except that any speed limit within any municipality shall be an absolute speed limit and any speed in excess thereof shall be unlawful.

"1. 30 miles per hour in any municipality;"

For the first time, speeds prescribed for areas within a municipality were made absolute and speeds in excess thereof unlawful. The act as then amended has remained the same in that respect ever since.

Our case law in construing the statutes up to that time is also of interest. In Fairchild v. Fleming, 125 Minn. 431, 440, 147 N. W. 434, 438, in construing L. 1911, c. 365, § 16, we said:

"* * * it is to be observed that the statute creates no duty on the part of an automobile driver to conform to a specified rate of speed, but simply furnishes a rule of evidence in proving negligent or improper speed."

In Mechler v. McMahon, 184 Minn. 476, 239 N. W. 605, we had under consideration Mason St. 1927, §§ 2720-3(a) and 2720-4(a).[10] We held that violation of these statutory provisions was negligence per se. We there said (184 Minn. 480, 239 N. W. 607):

---

[10] 2720-3(a). "No person shall operate or halt any vehicle upon a highway carelessly or heedlessly in disregard of the rights or safety of others or in a manner so as to endanger or be likely to endanger any person or property."

2720-4(a). "Any person driving a vehicle on a highway shall drive the same at a speed not greater than is reasonable and proper, having due regard to the traffic, the surface and width of the highway, and of any other conditions then existing."

"We now state the rule to be that, in the absence of valid excuse or justification, the violation by the injured person of a statute or ordinance enacted for the benefit of the other party is conclusive evidence of contributory negligence if such violation proximately contributes to the injury. The rule in this state has always been that the unjustified violation by the defendant of a statute or ordinance enacted for the benefit of the injured party is negligence per se if it proximately results in injury."

In Duffey v. Curtis, 193 Minn. 358, 361, 258 N. W. 744, 746, we considered Mason St. 1927, § 2720-4(b). We there said:

"Violation of subd. 3 of § 2720-4 is declared by subd. (b) thereof (hereinbefore quoted) to be 'prima facie evidence' that a vehicle was being driven 'at a speed greater than is reasonable.' It is not conclusive evidence that the violator was guilty of negligence or that such violation proximately contributed to the accident. It was for the jury to determine whether plaintiff was traveling at a speed greater than was reasonable."

In distinguishing Mechler v. McMahon, 184 Minn. 476, 239 N. W. 605, we said in the Duffey case with reference to Mason St. 1927, § 2720-4(a), (193 Minn. 362, 258 N. W. 746):

"A finding that a driver of an automobile violated the above provision would, of course, necessitate a finding that he was driving at a speed greater than was reasonable. But subd. (b) of § 2720-4, first hereinbefore quoted, makes operating a vehicle at a speed in excess of that specified in the following provisions of the section only prima facie evidence of operating it at a speed greater than reasonable. It follows that a driver may violate the speed provisions of § 2720-4 and still not be guilty of negligence."

We there followed Tully v. Flour City Coal & Oil Co. 191 Minn. 84, 86, 253 N. W. 22, 23, which we point out was decided after the Mechler case, where we held:

"Defendant contends that the speed of plaintiff's car was in excess of the statutory limit and that plaintiff was *prima facie* guilty of

negligence. If the jury believed that the speed was in excess of the statutory rate it might still believe that plaintiff was not negligent, since violation of the statute merely creates a rebuttable presumption of fact."

The result of our decisions up to the time of the adoption of L. 1939, c. 430, was that a violation of the speed limit expressed in the statute was not negligence per se but only prima facie evidence of negligence. It is also apparent that our decisions are based on the fact that such speeds are prima facie evidence of negligence because the sections of the statute dealing with speed declare it to be so. The question then arises: What did the legislature intend by the change in language of the statute when L. 1939, c. 430, was adopted making speed limits within municipalities absolute and a speed in excess thereof unlawful?

When the bill which became L. 1939, c. 430, was first introduced it contained provisions identical wtih those finally adopted. Prior to adoption it was amended in the house so that the pertinent provision would read:

"Where no special hazard exists the following speeds shall be lawful and any speeds in excess of said limits shall be unlawful; except that the Commissioner of Highways may designate and mark zones in which higher speeds may be lawful."

As so amended it passed the house.[11] That amendment would have brought our statute substantially in line with the uniform act. It would have had the effect of removing the prima facie effect of exceeding the speed limit and would have made any excess speed unlawful both within and without a municipality.

When the bill reached the senate, it was again amended by striking out the amendment passed in the house and reinstating the exact language of the bill as originally introduced.[12] The result of this amendment was to reinstate the rule that exceeding the stated speed limits is prima facie evidence that the speed is not reasonable and prudent and is unlawful outside a municipality, but it again made

[11]See, Journal of the House, 1939, p. 729.
[12]See, Journal of the Senate, 1939, p. 1564.

speed limits within municipalities absolute speed limits and any speed in excess thereof unlawful. In this respect it differs from the uniform act.

There is another part of L. 1939, c. 430, § 6, which cannot be overlooked in any determination of legislative intent respecting the speed provisions of our statute. L. 1939, c. 430, § 6(e), (M. S. A. 169.14, subd. 5) was passed without amendment as originally drafted. It reads:

"Whenever local authorities within their respective jurisdiction shall have reason to believe that the existing speed limit upon any street or highway or part thereof not a part of the trunk highway system is greater or less than is reasonable or safe under conditions existing they may request the commissioner of highways to authorize, upon the basis of an engineering and traffic investigation, the erection of appropriate signs designating what speed is reasonable and safe, and the commissioner does hereby have authority to authorize the erection of such signs designating a reasonable and safe speed limit thereat which shall be effective when such appropriate signs giving notice thereof are erected by authority of the commissioner. Alteration of speed limits on streets and highways shall be made only upon authority of the commissioner."

It must be observed that the basis for raising the speed limit in a municipality is that the prescribed speed is less than is reasonable or safe under existing conditions of the street or highway. The speed limit could be raised only by authority of the commissioner of highways upon the basis of an engineering and traffic investigation.

This provision was amended by L. 1947, c. 428, §§ 12 and 13, so as to separate streets and highways which are part of the trunk highways from those which are not, giving the commissioner the right to determine whether the speed limit should be raised on trunk highways, and also giving the commissioner, upon application of the municipal authorities, the authority to raise the speed limits on streets and highways not part of the trunk highway system.[13]

---

[13]"When the commissioner determines upon the basis of any engineering and traffic investigation that any speed set forth in this section is greater

The legislature then added the following provision to both sections:

"* * * Any speeds in excess of such limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful; except that any speed limit within any municipality shall be an absolute speed limit and any speed in excess thereof shall be unlawful."

This provision had not been included prior to the 1947 amendment. It is apparent from the addition of this statement that the legislature intended to emphasize the fact that the same rule was to apply to any increased speed within a municipality as to the basic speed. Were it not for that part of L. 1939, c. 430, § 30 (M. S. A. 169.96), which reads:

"In all civil actions, a violation of any of the provisions of this act by either or any of the parties to such action or actions shall not

or less than is reasonable or safe under the conditions found to exist on any trunk highway or upon any part thereof, he may erect appropriate signs designating a reasonable and safe speed limit thereat, which speed limit shall be effective when such signs are erected. Any speeds in excess of such limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful; except that any speed limit within any municipality shall be an absolute speed limit and any speed in excess thereof shall be unlawful." L. 1947, c. 428, § 12.

"When local authorities believe that the existing speed limit upon any street or highway, or part thereof, within their respective jurisdictions and not a part of the trunk highway system is greater or less than is reasonable or safe under existing conditions, they may request the commissioner to authorize, upon the basis of an engineering and traffic investigation, the erection of appropriate signs, designating what speed is reasonable and safe, and the commissioner may authorize the erection of appropriate signs designating a reasonable and safe speed limit thereat, which speed limit shall be effective when such signs are erected. Any speeds in excess of these speed limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful; except that any speed limit within any municipality shall be an absolute speed limit and any speed in excess thereof shall be unlawful. Alteration of speed limits on streets and highways shall be made only upon authority of the commissioner." L. 1947, c. 428, § 13.

be negligence per se but shall be prima facie evidence of negligence only,"

we would have no difficulty in holding that any speed in excess of the statutory speed within a municipality is negligence per se under such decisions as Mechler v. McMahon, 184 Minn. 476, 239 N. W. 605. This provision was in the bill as introduced and was never amended even when the bill was amended in the house. It was not in L. 1937, c. 464, nor is it to be found in the uniform act. The 1937 act copied the rule for interpretation from the uniform act and was the same as our statute prior to that time (Mason St. 1927, § 2720-65). This has now become the first paragraph of M. S. A. 169.96 and reads as follows:

"This chapter shall be interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it."

Inasmuch as the right to raise the speed limit under L. 1939, c. 430, § 6(e), (M. S. A. 169.14, subd. 5) rests upon a determination that it is reasonable and safe to provide a speed limit higher than the basic speed provided in the statute and inasmuch as the stated speed limit or authorized increased speed limit within a municipality is an absolute speed limit and any speed in excess thereof is declared to be unlawful, it is anomalous that we should still be asked to hold that a jury may find that it is not negligence to exceed such speed. It seems inconceivable that the legislature intended to say that speeds in excess of those specified are not "reasonable or safe" and are "unlawful"—which is the inescapable inference from § 169.14, subd. 5—but that you may still hold that it was not negligence to exceed such speed. Whether the legislature simply overlooked the effect of a literal application of § 169.96 to the provisions of the statute dealing with speeds within a municipality we cannot say.

From our cases dealing with the speed provisions of our statute in a municipality it is apparent that the inconsistency of applying both §§ 169.96 and 169.14, subd. 2, has often been troublesome.

Mahowald v. Beckrich, 212 Minn. 78, 2 N. W. (2d) 569, involved a collision within the city of Shakopee. Plaintiff testified that defendant was traveling 35 to 40 miles per hour. With respect to the speed statute we said (212 Minn. 80, 2 N. W. [2d] 571):

"Under these circumstances, the question of defendant's negligence was clearly for the jury. If he was traveling at the speed testified to by plaintiff, he violated Mason St. 1940 Supp. § 2720-178, and such violation is 'prima facie evidence' that he was traveling at a speed greater than was reasonable and prudent under the conditions then and there existing. Whether such speed was unreasonable and whether such violation contributed proximately to the collision were questions for the jury."

In support of this statement we cited Duffey v. Curtis, 193 Minn. 358, 258 N. W. 744; Hayden v. Lundgren, 175 Minn. 449, 221 N. W. 715; Hustvet v. Kuusinen, 184 Minn. 222, 238 N. W. 330. We apparently overlooked the fact that all these cases were decided before the passage of L. 1939, c. 430, which changed the rule with respect to making the speed limit specified for municipalities an absolute speed limit and any speed in excess thereof unlawful. In Schroeder v. Streed, 231 Minn. 267, 269, 42 N. W. (2d) 816, 817, decided in 1950, we said:

"* * * a jury could readily find that he was traveling considerably over 30 miles an hour. M. S. A. 169.14, subd. 2, declares that if a driver exceeds 30 miles an hour in a municipality he is prima facie negligent. Since on defendant's own admission the jury could find that he was operating his car at an unlawful speed, the question remains whether it could also find that such negligence, if any, was the proximate cause of this accident."

Of course, M. S. A. 169.14, subd. 2, does not declare that a speed in excess of 30 miles an hour in a municipality is prima facie negligence. It declares that such speed is an absolute speed limit and a speed in excess thereof is unlawful, and it is only by reading this section in connection with § 169.96 that it can be said that the

statutes as so read together make a speed in excess of 30 miles an hour in a municipality prima facie evidence of negligence.

The later case of Fisher v. Clarkson, 233 Minn. 318, 46 N. W. (2d) 665, involved a collision in the city of Minneapolis. With respect to speed we said (233 Minn. 319, 46 N. W. [2d] 666):

"* * * since there was credible evidence that plaintiff was going more than 30 miles per hour, the court should have instructed the jury not only that a driver forfeits the right of way by traveling at an unlawful speed, but also that the absolute maximum lawful speed in municipalities is 30 miles per hour. The court having refused to give the latter instruction and having further erroneously stated that there was *no evidence that plaintiff's speed was excessive,* there was reversible error."

We did not elaborate upon the above statement, and it is difficult to determine whether we intended to say that a speed in excess of 30 miles per hour was unlawful and therefore negligence or if we intended simply to leave the matter of determining negligence with the jury.

In Johnson v. Larson, 234 Minn. 505, 508, 510, 49 N. W. (2d) 8, 10, 11, we said:

"* * * The accident happened within the village limits of Baudette * * *.

\* \* \* \* \*

"* * * The evidence abundantly supports the claim that Haukaas was negligent. He violated the statute covering the speed of motor vehicles within the limits of municipalities."

That case simply holds that a jury may find a driver negligent where he violates the speed limit; it probably is no authority for holding that he is guilty of negligence per se when he has violated such statute.

Apparently the trial courts have had the same difficulty. The instruction in the case before us is a good example. The court in effect first states that 30 miles an hour is an absolute speed limit and any speed in excess thereof is unlawful and then proceeds to

say that, in spite of this statutory provision, it is still only prima facie evidence that it is unlawful and that it is for the jury to say whether it is unlawful or not. How can a jury apply both?

There is still another inconsistency in our statutes which should not be overlooked. M. S. A. 169.14, subd. 7 (first enacted as L. 1939, c. 430, § 6[g]), reads:

"The provisions of this chapter declaring speed limitation shall not be construed to relieve the plaintiff in any civil action from the burden of proving negligence on the part of the defendant as the proximate cause of an accident."

This provision is taken from a portion of the uniform act, where it had only a limited application. 11 Uniform Laws Annotated, § 20(a).[14]

In some jurisdictions it has been held that a violation of the provisions of § 20 of the uniform act constitutes negligence per se and that, when such violation is established, the question whether it was the proximate cause of the injury ordinarily is for the jury. Cf. Godfrey v. Queen City Coach Co. 201 N. C. 264, 159 S. E. 412; King v. Pope, 202 N. C. 554, 163 S. E. 447.

As used in our statute, it would seem that this provision can have meaning only if proof of violation of the speed limitation, at least where the violation occurs within the limits of a municipality, will relieve the plaintiff from the burden of proving negligence. If M. S. A. 169.96 makes proof of a speed in excess of the statutory speed in a municipality only prima facie evidence of negligence, it must follow, without any statutory provision, that he is not relieved from proving proximate cause. It seems apparent that, in

---

[14]"Nor shall any person drive at a speed which is greater than will permit the driver to exercise proper control of the vehicle and to decrease speed or to stop as may be necessary to avoid colliding with any person, vehicle or other conveyance upon or entering the highway in compliance with legal requirements and with the duty of drivers and other persons using the highway to exercise due care, provided, that this provision shall not be construed to relieve the plaintiff in any civil action from the burden of proving negligence upon the part of the defendant as the proximate cause of an accident."

making changes from the uniform act by adding the second paragraph of § 169.96, the legislature either did not consider the inconsistency which would arise between this section and § 169.14, subd. 7, or did not intend to have § 169.96 apply to violations of speed limitations within municipalities. It is obvious that § 169.96 cannot be reconciled with the absolute speed limits in a municipality specified in § 169.14. As a guide to statutory construction, we may consider § 645.26, subd. 1, which reads:

"When a general provision in a law is in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions be irreconcilable, the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted at a later session and it shall be the manifest intention of the legislature that such general provision shall prevail."

The section of our traffic act providing for speed limits contains within itself the rule for determining negligence. Our cases have so held in the past. It is a special provision, complete in itself, and should govern over the general provision which undoubtedly was enacted to provide a rule for the other sections of the act which had no such special provision.

We do not overlook § 645.26, subd. 2, which reads:

"When, in the same law, several clauses are irreconcilable, the clause last in order of date or position shall prevail."

Section 169.96 is a general provision which, if read literally, would apply to all parts of the traffic act. This action does not present a case in which there is a conflict between two clauses of equal specificity. Rather, it presents a case in which a specific provision applicable to one part of the traffic act controls over a general provision that is applicable to all parts of the act not controlled by a specific provision applicable to that part. Consequently, § 645.26, subd. 1, is applicable rather than subd. 2.

It would seem to us that the whole purpose of differentiating between speeds in a municipality and outside a municipality was to make one speed absolute, as the statute provides, and leave the other merely prima facie evidence of unlawfulness, as the law has always provided for a good many years. To say that, even though the violation occurs within the limits of a municipality, the same rule applies as outside such limits simply renders meaningless the language that speeds in a municipality are absolute and that speeds in excess of the stated limits in a municipality are unlawful. The legislature must have had in mind that a different rule should prevail when it abandoned the prima facie rule as to municipalities in the 1939 act. Certainly, that must have been the intention of the house when it amended the original bill by making all excess speeds unlawful.

As we have said, prior to the adoption of L. 1939, c. 430, § 6, which was an amendment of Mason St. 1938 Supp. § 2720-178 (derived from L. 1937, c. 464, § 28), a speed in excess of the speed limit specified in the statute was prima facie evidence that the speed was not reasonable or prudent and that it was unlawful. Our cases are based on the rule specified in the speed section of the statute. No distinction was made between areas within and those without a municipality. As this statute then existed it needed no implementation. When L. 1939, c. 430, § 30 (which brought into being what is now M. S. A. 169.96), was enacted, if the legislature had intended thereafter to have the same rule applied to a speed in excess of the statutory speed limit within as well as without a municipality, all it had to do was to leave the statute as it was. It did not do so. Instead, it left the law substantially as it was outside a municipality and adopted a new rule of an absolute speed limit within a municipality and declared that any speed in excess thereof is unlawful. To hold that in the same act it then intended that § 169.96, the provision declaring any violation of the traffic act prima facie evidence of negligence, would apply to the speed sections as well as to the others and thereby destroy the very distinction which they had made between exceeding the speed limit within a municipality and outside a municipality just does not make sense. As we have said above, if

they had so intended, all they had to do was to leave the statute as it was.

It is now argued that, inasmuch as the legislature declared speeds in excess of the statutory speed outside a municipality prima facie evidence that the speed is not reasonable or prudent and is unlawful but said only that such excess speed within a municipality is unlawful, it intended to establish only a rule applicable to criminal violations as far as the speeds within a municipality are concerned and that it does not control the determination of negligence. In other words, the reasoning is that, by omitting the words "reasonable or prudent" from the clause dealing with speeds in municipalities, we are dealing only with criminal penalties and not with negligence. Of course, the legislature did more than that; what it did was to substitute the words "shall be an absolute speed limit" for the words "shall be prima facie evidence that the speed is not reasonable or prudent." Surely this substitution could have no other implication than that the prima facie rule should be abandoned as far as speeds within a municipality are concerned. The argument becomes more untenable when we read M. S. A. 169.14, subd. 2, together with subds. 4 and 5 as amended by L. 1947, c. 428, §§ 12 and 13. As noted above, the basis for increasing the speed within a municipality is that a speed greater than the basic speed is reasonable and safe. The opposite must also then be true that, if the basic speed is not increased, it is deemed unreasonable and unsafe to have a higher speed limit. We cannot believe that the legislature intended one rule to apply to criminal violations and another to the field of negligence.

There is apparent a peculiarity in § 169.14, subd. 5, in that it provides with reference to increased speeds:

"* * * Any speeds in excess of these speed limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful; except that any speed limit within any municipality shall be an absolute speed limit and any speed in excess thereof shall be unlawful."

That is the same language as is used in § 169.14, subd. 2. Subd. 5 deals only with speeds within a municipality. Why the first clause quoted above was included at all we cannot say, but it is apparent that the use of the word "except" means that there shall be a different rule within a municipality from that outside a municipality. In other words, the exception applies to all speeds within a municipality. There is no other speed limit contained in the statute applicable to municipalities.

Nor is it convincing to argue that it is unreasonable to prohibit speeds in excess of 30 miles per hour in areas such as we have here, which are within the limits of a municipality but in fact not urban in character. If it is determined by the commissioner of highways, upon the basis of an engineering and traffic investigation as is required by the statute, that a speed in excess of 30 miles an hour is reasonable and safe, he may raise such speed limits on a trunk highway on his own initiative under § 169.14, subd. 4. If local authorities believe that a higher speed is reasonable and safe on streets and highways within the municipality not a part of the trunk highway, they may request the commissioner to raise such speed limit, which may likewise be done upon the basis of an engineering and traffic investigation under § 169.14, subd. 5. Until such speed limits are raised it must be presumed that speeds in excess of the absolute speed limits are not reasonable and safe. Similarly, if they are raised, the increased speed limits become absolute, and any speed in excess thereof should be deemed unreasonable, unsafe, and unlawful. We cannot divorce a legislative declaration of that which is unreasonable and unsafe from that which is negligent. We therefore hold that, where it conclusively appears as it does here that a defendant is driving at a speed in excess of the statutory speed in a municipality, he is guilty of negligence per se and that the only question for the jury to pass upon in such case is whether such negligence was a proximate cause.

Of course, where the evidence is in conflict as to whether or not there was a violation of the speed limit, a jury question is presented. The jury should, however, be instructed that, if they find that the

defendant was traveling at a speed in excess of the statutory speed limit, they must find him guilty of negligence. The question then becomes one of proximate cause unless the evidence on that question also is conclusive, in which event it becomes a question of law. In determining whether there is evidence on the issue of proximate cause, the usual rules pertaining to the determination of questions of fact apply.

Decisions from courts of foreign jurisdictions are of little help. Such decisions must always be considered in the light of controlling statutes or the common law of the jurisdictions from which they come. As far as we have been able to determine by our research, none of the 18 states which have adopted the uniform traffic act appear to have adopted a provision similar to § 169.96. The authorities are in hopeless conflict in determining whether a speed in excess of a statutory speed limit is negligence per se or merely prima facie evidence of negligence.[15]

■ With respect to the forfeiture of right of way, the court instructed the jury as follows:

"If you find from a fair preponderance of the evidence that Donald Engel was traveling at an unlawful speed in any right of way he might have otherwise had under the statute would be forfeited. If, on the other hand, you find that he was driving at a lawful rate of speed, then you would follow the right of way provisions which were read to you prior to the last section of the statute. A violation of any one of these statutes is prima facie evidence of negligence. That term has been defined, and I will not repeat the definition of prima facie."

M. S. A. 169.20, subd. 1, contains, among others, the following provision:

"The driver of any vehicle or street car traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder."

[15]See, 60 C. J. S., Motor Vehicles, § 290, p. 684; 5 Am. Jur., Automobiles, § 262; Annotations, 5 L.R.A.(N.S.) 255, 25 L.R.A.(N.S.) 40, 38 L.R.A.(N.S.) 488, 42 L.R.A.(N.S.) 1180, and 51 L.R.A.(N.S.) 993.

The speed of defendant Engel was an unlawful speed. Where it is determined that the speed of a defendant is unlawful, he forfeits whatever right of way he may have had, and the adverse party is entitled to instructions to that effect. Fisher v. Clarkson, 233 Minn. 318, 46 N. W. (2d) 665; Norton v. Nelson, 236 Minn. 237, 53 N. W. (2d) 31. It must be kept in mind that cases such as Hustvet v. Kuusinen, 184 Minn. 222, 238 N. W. 330, were decided prior to the adoption of L. 1939, c. 430, which made speeds in excess of 30 miles per hour in a municipality unlawful unless an increased speed is adopted pursuant to M. S. A. 169.14, subds. 4 and 5, and, if that is done, speeds in excess of such increased speed limits are likewise unlawful. Under the evidence in this case, defendant Engel was driving at a speed in excess of that specified by the statute and therefore at an unlawful speed. It follows that he forfeited whatever right of way he may have had. The effect of the court's instruction was to permit the jury to find that his speed was not unlawful and to invoke the prima facie rule in the determination of the lawfulness of the speed. In this the court erred.

For the errors discussed there must be a new trial. In view thereof, we need not determine other errors assigned.

Reversed.